# CASES ARGUED AND DECIDED

## IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

## MARCH TERM, 1911.

---

PURITY EXTRACT AND TONIC COMPANY *v.* C. C. LYNCH.

[56 South. 316.]

1. INTOXICATING LIQUORS. *Malt liquors. Acts of 1908, chapter 115, section 1.*

   A beverage which contains no alcohol and is not intoxicating but contains 5.73 per cent of malt is a malt liquor within the acts of 1908, chapter 115, section 1, prohibiting the sale within the state of any vinous, alcoholic, malt, intoxicating or spirituous liquors.

2. ACTS OF 1908, CHAPTER 115, SECTION 1. *Constitutionality. Police power.*

   The prohibition of the sale of non-intoxicating malt liquors within the state as provided by the acts of 1908, chapter 115, section 1, is not unconstitutional as beyond the police power.

3. SAME.

   The police power of the state has its limitations. But these limitations have not been reached when the state law is only

(650)

made broad enough to make its prohibitory laws effective and include in its provisions frauds, disguises, subterfuges, attempted evasions, or beverages easily used as subterfuges for intoxicating liquors.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by the Purity Extract and Tonic Company against C. C. Lynch. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Green & Green,* for appellant, filed an elaborate brief contending:

First.   That Poinsetta does not come within prohibition statutes of the state as defined by the decisions of this court.

Second.   That if so, said statutes when prohibiting the the sale of liquids, neither distilled, fermented or otherwise intoxicating, are void under the commerce clause of the federal Constitution when said liquids are offered for sale in original packages.

Third.   That said statutes in so far as they prohibit the sale of Poinsetta fall under the condemnation of those sections of the federal Constitution prohibiting states from depriving any person of liberty or property without due process of law, or denying to any person the equal protection of the law.   Citing: Sedgwick on Statutory and Constitutional Law, 482; 3 Serg. and Rawl., 63, 73; *Brown* v. *Maryland,* 12 Wheat. 447; *Bowman* v. *Chicago & Northwestern Railway,* 125 U. S. 465; *Leisy* v. *Hardin,* 135 U. S. 100; *In re Rahrer,* 140 U. S. 35; *Brennan* v. *Titusville,* 153 U. S. 289; *Scott v. Donald,* 165 U. S. 95; *Vance* v. *Vandercock,* 170 U. S. 441; *Rhodes* v. *Iowa,* 170 U. S. 411; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Telegraph Co.* v. *Philadelphia,* 190 U. S. 162; *American Express Co.* v. *Iowa,* 196 U. S. 133; *Brewing Co.* v. *Crenshaw,* 198 U. S. 21; *Cook* v. *Marshall County,*

196 U. S. 261; *Foppiano* v. *Speed,* 199 U. S. 504; *South Carolina* v. *United States,* 199 U. S. 461; *Rearick* v. *Pennsylvania,* 203 U. S. 508; *Express Co.* v. *Kentucky,* 214 U. S. 218; 17 Am. and Eng. Ency. Law, p. 197; Intoxicating liquor is defined. *Kelly* v. *Connor,* 122 Tenn. (1909) 373; *Vance* v. *Company,* 170 U. S. 452, 42 L. Ed. 1100; *State* v. *Eighteen Casks of Beer,* 104 Pac. 1095; *Delameter* v. *South Dakota,* 205 U. S. 93, 51 L. Ed. 724; *New Orleans Gas Light Co.* v. *Louisiana Light & H. P. & Mfg. Co.,* 115 U. S. 650, 29 L. Ed. 516, 6 Sup. Ct. Rep. 252; *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 557, 30 L. Ed. 244, 1 Inter. Com. Rep. 31, 7 Sup. Ct. Rep. 4; *Atlantic Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328, 334, 52 L. Ed. 230, 234, 28 Sup. Ct. Rep. 121, 123; *Adams Exp Co.* v. *Kentucky,* 206 U. S. 129, 125, 51 L. Ed. 987, 991, 27 Sup. Ct. Rep. 606, 607; *Robins* v. *Taxing District,* 120 U. S. 489, 497, 30 L. Ed. 694, 697, 1 Inters. Com. Rep. 45, 7 Sup. Ct. Rep. 592; *Caldwell* v. *North Carolina,* 187 U. S. 622, 47 L. Ed. 336, 23 Sup. Ct. Rep. 229; *Austin* v. *Tennessee,* 179 U. S. 343, 45 L. Ed. 224, 21 Sup. Ct. Rep. 132; *May* v. *New Orleans,* 178 U. S. 496, 44 L. Ed. 1165, 20 Sup. Ct. Rep. 976; and *Cook* v. *Marshall County,* 196 U. S. 261, 49 L. Ed. 471, 25 Sup. Ct. Rep. 233.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

I contend that the fact that Poinsetta is sold as a beverage, and contains malt (5.73 per cent), makes it a malt liquor within the meaning of our statute prohibiting the sale of "vinous, alcoholic, malt, intoxicating, or spirituous liquors, or intoxicating bitters, or other drinks, which if drunk to excess, will produce intoxication." This statute provision has been part of our law for many years, and is now in force. See section 1746, Code of 1906, as amended by chapter 115, Laws of 1908.

The record shows that Poinsetta is not intoxicating, and is not deleterious to health and morals, and the pro-

cesses of its manufacture to be sanitary, and that in its manufacture the malt is extracted from hops, or other cereals, in such a way that no alcohol is formed.  The first question presented, therefore, for discussion, is whether Poinsetta is a malt liquor within the meaning of our statute.  I take the position that any beverage containing an appreciable quantity of malt, when sold and consumed as a beverage, whether intoxicating or not, is a malt liquor.  The fact that the statute prohibits the sale of malt liquor is sufficient, without regard to the intoxicating properties of such liquor.  Our court has so held in a number of case which I will discuss.

In the case of *Reyfelt* v. *State,* 73 Miss. 415, the court held that home-made wine, whether intoxicating or not, could not be sold because it was a vinous liquor and such liquor was clearly within the condemnation of the statute.

The Alabama court has held in the case of *Marks* v. *State,* 48 So. 864, that when ''The prohibition statute names, designates, or enumerates the kinds, classes, or species of beverages against which its provisions are directed, then there is no room for further inquiry into the scope of such statute.''  In the case at bar, it is admitted that it is a beverage containing malt, and it makes no difference whether it is alcoholic or intoxicating.  Our own court has followed the Marks case in the case of *Edwards* v. *Gulfport,* 49 So. 620.  In this last named case, speaking through Chief Justice Whitfield, the court said that a conviction was proper because the liquor was shown to be both alcoholic and a malt liquor The court would undoubtedly have sustained a conviction if the liquor was shown to be either an alcoholic or a malt liquor.  Since, the court adopted a construction placed upon a similar statute by the Alabama court, where that court held that the various named liquors— vinous, alcoholic, spirituous or malt—were not qualified by the words, ''or other drinks, which if drunk to excess, will produce intoxication.''

Since that decision, our court has passed upon the
question again in the famous "Near Beer" cases (*Fuller* v. *City of Jackson,* 52 So. 873).    The opinion of
Chief Justice Mayes in response to the suggestion of
error is the law on this subject, so I shall take occasion
to quote frequently from this opinion.  I quote first from
page 876, second column, as follows: "The liquors expressly named which the law prohibits being sold are
'vinous, alcoholic, malt, or spirituous liquors, or intoxicating bitters.'    The sale of these liquors is prohibited
without reference to whether in fact they intoxicate."
And again further down on the page he quotes with approval from the Edwards case: "Whether the liquors
fell within the classes expressly prohibited by the statute, it was not necessary to prove that they were of an
intoxicating character."    Citing the cases of *State* v.
*Auditor,* 68 Oh. St. 635, 67 N. E. 1062; *United States* v.
*Cohn,* 2 I. T. 474, 52 S. W. 38-44.  In the last case above
cited, the court uses this language: "If it were intended that only such of these as could be shown to be
intoxicating, should be included, why name them at all?
Why not say that all intoxicating liquors and drinks
should be prohibited?"  To the same effect, note the
following cases: *State* v. *York,* 74 N. H. 125, 65 Atl. 685;
*State* v. *Frederickson,* 101 Me. 37, 63 Atl. 535, 115 Am.
St. Rep. 295, 6 L. R. A. (N. S.) 186; *State* v. *Conner,* 99
Me. 61, 58 Atl. 59.

In the *Frederickson case, supra,* the beverage sold was
cider, which was unfermented and not intoxicating, and
yet the court held that it fell within the scope of the
forbidden class.  See the syllabus in that case.

Coming now to the last point discussed in the brief of
counsel, which is the constitutionality of our statute, I
will have little to say, as I think the point well settled,
to use the language of the Chief Justice in the *Fuller
case, supra,* 52 So. 877:

"I do not think the constitutionality of the statutes of
this character can be successfully controverted.  The

police power of a state is broad enough to prohibit the sale of those things which it considers destructive of the health, the good morals, and the peace of its citizens. If the state has this power, it is necessarily vested with the authority to make its laws effective, and the subterfuges and disguises resorted to by the ingenious violators of the liquor laws are as well known to the legislator and the judge as to those who violate the law. Knowing the schemes resorted to by those who would destroy the prohibition laws and make them farcical by their failure to give that protection from the evil of intoxicants, which is their design and purpose, the legislature has met all schemes of those who would evade, by prohibiting the sale of such subterfuges. It has prohibited the sale not only of intoxicants, but of that character of intoxicants which go hand in hand with intoxicants; that is, have the character of intoxicants, though in truth they do not intoxicate. The police power of the state is not so impotent or restricted as that it cannot combat and repel all evasions. We hear much of the constitutional rights; but no man's rights are infringed upon by this act of the legislature, and the construction which I give it, and which this court has given it, unless such person desires to engage in the traffic of intoxicants. Surely the state can say to such person that you cannot profit in the sale of this contraband article of merchandise, no matter how small the quantity sold, or by what name you call it. If this great power of the state could be thus thwarted by those engaged in criminal acts, it would indeed be an impotent thing. In criminal and in civil law, fraud, disguise, and pretense, whatever form it has assumed in an effort to subvert the good faith of the law, has not been subtle enough to ·evade the legislatures and the courts for long.''

MAYES, C. J., delivered the opinion of the court.

The appellant brought suit in the circuit court of Hinds county against C. C. Lynch to recover the sum of five hundred dollars claimed to be due appellant by virtue of a contract which it had with Lynch and which he refused to pay. Appellant failed to recover judgment in the court below; hence prosecutes this appeal.

Only a brief statement of the facts need be made. Appellant is a corporation located in the city of Chattanooga, Tenn., and is engaged in the manufacture and sale of a beverage known as "Poinsetta." Some time in November, 1910, appellant made a contract with Lynch, under the terms of which Lynch agreed to buy Poinsetta for a period of five years from January 1, 1911. The contract stipulated that appellant should deliver the beverage to the railroad company at Chattanooga, consigned to Lynch at Jackson, Hinds county, Miss. The contract further stipulated that Lynch should only have the right to sell the beverage in the county of Hinds, state of Mississippi, and Lynch contracted to pay for this exclusive privilege the sum of five hundred dollars. Lynch failed to comply with his part of the contract, whereupon appellant instituted this suit. The defense is that the beverage is prohibited by law from being sold in Hinds county, and, since the contract is violative of the law, he claims nonliability under same.

The case is before the court on an agreed state of facts. The agreed facts state that Poinsetta contains no alcohol, preservatives, or saccharine. It is agreed that Poinsetta is sold as a beverage, and is composed of 90.45 per cent. of pure distilled water, and 9.55 per cent. of solids, all of the solids being derived from cereals in an unfermented state, and being wholesome and nutritious. But it also appears that it does contain 5.73 per cent. of malt. The formula for making the beverage is not given, but it is agreed that in the manufacture of same the cereals used are not treated

in the same way as those used in the preparation of any malt beverage containing alcohol which will intoxicate, but the treatment of the grain is by extracting the valuable food properties and combining them with water, so that the grain is not fermented or steeped in such a way as to produce saccharine matter or alcohol; that the beverage contains none of the properties of alcoholic drinks or malt drinks that would intoxicate. The primary processes employed in the production of Poinsetta have some of the elements in common with some of those employed in preparing grain for malting porter, ale, or beer, etc.; but the process thereafter used in the preparation of this beverage is radically different from that used to produce ale, beer, etc. But Poinsetta is made from malt. It is agreed that its taste is distinct and different from any intoxicating malt or other liquor. It is agreed that it has not the appearance or odor of intoxicating liquor, and cannot be employed as a subterfuge.

In the discussion of this case we start out with the admission of counsel that this drink is a beverage containing no alcohol, it is true, but containing 5.73 per cent. of malt, and we unhesitatingly pronounce the beverage a malt liquor. It can be nothing else. The legislative acts of 1908, p. 116, section 1, prohibit the sale in this state of any vinous, alcoholic, malt, intoxicating, or spirituous liquors. The sale of malt liquor is prohibited, whether in fact it intoxicates or not. In the cases of *Fuller* v. *City of Jackson,* 52 South. 876, 30 L. R. A. (N. S.) 1078; *Reyfelt* v. *State,* 73 Miss. 415, 18 South. 925, and *Edwards* v. *City of Gulfport,* 95 Miss. 148, 49 South. 620, it was held that, where the statute prohibited the sale of a certain named class of liquors as intoxicating liquors, such liquors could not be lawfully sold, though in fact they were not intoxicants. Poinsetta may or may not be an intoxicant; but it is a malt liquor, and as such is prohibited from being sold in

100 Miss.—42.

this state. The prohibition law cannot be made effective
unless it excludes all subterfuges.

It is argued by counsel for appellant that if the legis-
lative act in question is intended to shut off the sale of
any beverage containing no alcohol, which is not in itself
harmful, then the act is unconstitutional and beyond the
police power of the state. In so far as this question is
concerned, we have settled it in the case of *Fuller* v.
*City of Jackson,* 52 South. 876, 30 L. R. A. (N. S.) 1078.
In this connection we can do no better than to quote the
language of Chief Justice Dowdell, in the case of *Elder*
v. *State,* 162 Ala. 41, 50 South. 370: "If it should be
conceded that the articles, the sale of which is prohibited
by the act, are not in themselves injurious to health or
morals, still there can be no doubt, under former de-
cisions of this court, that to prohibit the sale of the arti-
cles mentioned is not without legislative competency.
To prohibit the sale of malt liquors is undeniably within
the police power of the state. The exercise of this power
by the legislature, in the prohibition of the sale of malt
liquor, is upon the idea of the conservation of public
morals. To this end it must logically follow that it is
equally within the police power of the state, through its
lawmakers, to enact any and all laws in their wisdom
necessary to prevent any evasion of the primary pur-
pose. If, in the wisdom of the legislature, in order more
thoroughly to prohibit the sale of malt liquor, which is
known to be an intoxicant, and to safeguard against
evasions of such law, it should be deemed necessary to
prohibit the sale of any and all beverages containing as
an ingredient 'maltose,' a known constituent of malt
liquor, we are unable to see why such legislation would
not reasonably come within the exercise of the state's
police power." We are aware of the fact that the lan-
guage of Chief Justice Dowdell, speaking for the Ala-
bama court, was afterwards receded from by a majority
of the court; but the principle declared by him has been

followed by other courts and concurred in by this court in the Fuller case referred to above.

In the case of *Pennell* v. *State,* 141 Wis. 35, 123 N. W. 115, it is held that: ''In enacting a police regulation it may be found necessary to include within the purview of the statute certain acts innocent and not in themselves the subject of police regulation, where the inclusion of such acts is necessary in the opinion of the legislature to make the police regulation effective, as in *Booth* v. *Illinois,* 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623. . . . This principle has been applied to liquor laws quite uniformly, and with reference to statutes substantially like ours which prohibited the sale, not only of intoxicants, but of those non-intoxicating beverages, the sale of which might easily be made a cover for the sale of intoxicants.'' See, also, *Luther* v. *State,* 83 Neb. 455, 120 N. W. 125, 20 L. R. A. (N. S.) 1146, and *State* v. *Fargo Bottling Works* (N. D.), 124 N. W. 387. 26 L. R. A. (N. S.) 872.

The police power of the state undoubtedly has its limitations. But those limitations have not been reached when the state law is only made broad enough to make its prohibitory laws effective and include in its provisions frauds, disguises, subterfuges, attempted evasions, or beverages easily used as subterfuges and known to be the handmaidens of intoxicating beverages.

*Affirmed.*