BOARD OF TRUSTEES OF UNIVERSITY OF MISSISSIPPI v. W. P. WAUGH.

[62 South. 827.]

1. COLLEGES AND UNIVERSITIES. *Students. Conditions on entrance. Laws 1912, chapter 177. Constitutional Law. Judicial power. Wisdom of legislation. Legislative powers. Presumption in favor of validity. Injunction. Bill. Titles and subjects of acts. Constitution 1890, sections 1 and 2. Constitution U. S. Amendment 14.*

   Under Laws 1912, chapter 177, abolishing and prohibiting Greek letter fraternities and sororities and all secret orders among students in the University of Mississippi and all other educational institutions supported in whole, or in part, by the state, providing penalties for any trustee, teacher or other officer connected with the institution for failure or refusal to enforce the provisions of the act, providing penalty for any student who knowingly violates the provisions of the act, etc., the board of trustees of the University of Mississippi had power to require a student as a condition precedent to his right to enter the University, to sign a pledge that he was not and would not become a member of any such order or fraternity or aid, abet, or encourage the organization thereof, would not apply for nor accept any scholarship or medal, or in any way be the beneficiary of any self-help fund, or accept any position in the University, if he violated such pledge, and would make it his purpose and endeavor to avoid violating either the letter or spirit of that act.

2. CONSTITUTIONAL LAW. *Judicial power. Wisdom of legislation.*

   Educational institutions of the state are under the control of the legislature and it has the power to create, regulate or abolish them, and it is not within the power of the courts to

supervise the wisdom of legislative acts and declare them un-- enforceable merely because it might be the view of the court that the act was unwise and unnecessary.

3. CONSTITUTIONAL LAW. *Legislative powers. Presumptions in favor of validity.*

All acts of a legislature are valid unless they conflict with the Constitution of the state or United States and should be upheld by the courts, unless it is plainly apparent that they conflict with the organic law, after solving all doubts in favor of their validity.

4. INJUNCTION. *Bill. Demurrer.*

In a suit to enjoin the board of trustees of the' University from enforcing an order requiring applicants for admission to the University to sign a pledge not to become a member of or assist in the organization of any secret order or fraternity, the bill is not saved from demurrer by alleging that the fraternity of which complainant was a member had for its paramount. purpose the enforcement and promotion of good morals and the highest attainment and standing in class, and good order and discipline in the student body of the college with which it was connected, since the court takes notice of the law prohibit- ing fraternities in educational institutions and the bill therefore showed that complainant was seeking to disobey the law.

5. CONSTITUTIONAL LAW. *Titles and subjects of acts.*

The sufficiency of the title of a legislative act is a legislative and not a judicial question.

6. COLLEGES AND UNIVERSITIES. *Constitution 1890, sections 1 and 2. Constitution United States Amendment 14. Students. Conditions of entrance. Laws 1912, chapter 177.*

Laws 1912, chapter 177 abolishing all secret orders and fraternities and prohibiting their existence in the University of Mississippi,. etc., does not violate the Constitution of 1890, section 1, which provides for the distribution of the powers, of government into three distinct departments nor of section 2, which prohibits. any person or collection of persons belonging to one of such departments from exercising any powers belonging to either of the others, nor is it discriminatory, within the Fourteenth Amendment to the Constitution of the United States, against applicants for admission to the University of Mississippi who are already affiliated with such fraternity at other institutions. since the right to attend such university is not a material right, but is conferred by law, and one seeking the benefit of the law must submit to the conditions imposed thereby.

Appeal from the chancery court of Lafayette county.
Hon. T. L. Lamb, Special Chancellor.

Suit by W. P. Waugh against the Board of Trustees of
the University of Mississippi. From a judgment over-
ruling a demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*W. C. McLean,* attorney for appellant.

*A. F. Fox* and *W. G. Cavett,* attorney for appellee.

Counsel on both sides filed able and elaborate briefs
too long for publication.

Mayes, Special Judge, delivered the opinion of the
Court.

The legislature of 1912 passed an act entitled "An act
to abolish and prohibit Greek letter fraternities and
sororities and all secret orders among students in the
University of Mississippi and in all other educational
institutions supported, in whole or in part, by the state,
providing penalties for any trustee, teacher, or other of-
ficer connected with the institution for failure or refusal
to enforce the provisions of this act, providing penalty
for any student who knowingly violates the provisions
of this act," etc.  See chapter 177, p. 192, Laws of 1912.
For purposes of decision we deem it unnecessary to set
out the act in full.  We shall content ourselves with set-
ting out in this opinion only the particular sections of
the act which are involved in this controversy.  These
sections are 1, 2, 3, and 4.

By section 1 it is provided that the fraternities and
sororities, or Greek letter societies known as "Delta
Kappa Epsilon," etc., *and all other secret orders, chap-
ters, fraternities, sororities, societies, and organizations,
of whatever name, or without a name,* of similar name
and purpose, among students are hereby abolished and
further prohibited to exist in the University of Missis-
sippi and in all other educational institutions supported,
in whole or in part, by the state.  Section 2 provides that

105 Miss. 40

no student in the University, or in any other educational institution supported, in whole or in part, by the state, who is a member of any of the orders, chapters, fraternities, sororities, societies and organizations hereby prohibited, shall be permitted to receive any class honors, diplomas or distinctions conferred by the institution of · which he is a student, nor to compete nor contend for any prize or medal offered by his respective school, or by any association or individual.     But any student who is a member of any of· the orders, chapters, fraternities, sororities, societies or organizations aforesaid may, upon entrance to any of the aforesaid schools, file with the chancellor, president or superintendent, as the case may be, an agreement in writing that he will not, during his attendance at said school, affiliate with same, nor attend their meetings, nor in anywise contribute any dues or donations to them, and thereafter, so long as such agreement is complied with in good faith, such student shall not be subjected to the restrictions created by this section. Section 3 commands that the act shall be enforced by the trustees and faculties by such rules and punishments as they may prescribe. Section 4 provides that any member of the board of trustees or faculty or other officer connected with any educational institution supported, in whole or in part, by the state, who shall knowingly permit any violation of this act, and shall fail or refuse to take proper steps to enforce this act, shall be removed from such position by the Governor.

Let it be here noted that the enforcement of this act is imposed upon the trustees and faculties of the educational institutions of the state, and they are required to do it by such rules and punishments as they may prescribe. Let it further be noted that section 4 emphasizes the duty of the trustees and faculties to enforce the act by providing that, if they fail or refuse to take proper steps to enforce it, they shall be removed from their positions by the Governor. When the above act is read, it discloses the fact that in its passage the legislature

had two purposes in view. The primary purpose was to prohibit the existence of any secret society at the University of Mississippi, or any other educational institution supported by the state. Its second purpose is to prohibit any student in any of the above institutions continuing to hold membership in any secret society, or affiliating with same in any way, after admission to the educational institutions of the state, from receiving any class honors, diplomas, distinctions, etc., or for competing for any prize or metal at any of such institutions, unless the student will file with the chancellor, president, or superintendent an agreement that he will not during his attendance at any such school affiliate with any of the prohibited secret societies, nor attend any of their meetings, nor contribute in dues or donations while he is a student at any of the educational institutions above named.

The enforcement of the act is committed to the rules prescribed by the trustees and faculties, and it is made their imperative duty, under penalty of removal from office, to see that the act is enforced. In order to carry out the duty which the legislature imposed upon them of enforcing the act, the trustees, by an order placed upon their minutes at the September meeting in 1912, made it a condition precedent to the right of any student to enter the University that each student making an application for admission should be required to sign the following statement: "I hereby state and affirm upon my honor that I am not now pledged to become a member of any of the Greek letter fraternities, societies or sororities named in the Senate Bill 227 of the Laws of Mississippi, 1912, pages 192 and 193, chapter 177, and that I have not become a member of any of said fraternities, sororities or societies within the sixty days preceding the opening of the session of 1912-13. I further pledge and promise not to join any such organizations while I am a student of the University, and that I will not aid or abet or encourage the organization or perpetuation of any such orders or societies while I am a student of the University. I further promise and pledge that I will not

apply for nor accept any scholarship or medal, or in any way be the beneficiary of any student's self-help fund, or accept any position in the University while I am a student therein, if I fail to keep or violate any of the provisions of the foregoing pledge. I furthermore promise and pledge to regard this obligation as binding between the sessions of 1912-13 and 1913-14, and that it shall be my purpose and constant endeavor to so act that no word or deed of mine could be even remotely construed as being violative to the letter and the spirit of what is known as the 'Anti-Fraternity Bill,' passed by the last legislature and approved by the Governor February 27, 1912.''

When the order of the trustees is examined, it is readily seen that the pledge which the student is required to sign is nothing more than that he will comply with the act of the legislature while he is in the institution. If the statute is constitutional, it occurs to us that the trustees adopted the only practicable way they could of enforcing the act of the legislature. The act is a mere disciplinary regulation. It was the judgment of the legislature that all secret orders were detrimental to the welfare of the educational institutions of the state. These educational institutions are under the control of the legislature. It had the power to create and abolish them, and, having the power to create and abolish, it had the power to regulate; and when the legislature has passed a law disciplinary in its nature, controlling and regulating any subject which it considered to be inimical to the welfare of the institution, it is certainly not within the power of any court to supervise the wisdom of legislative acts and declare its acts unenforceable, merely because it might be the view of the court that the act was unwise and unnecessary. All acts of a legislature are valid unless they conflict with the Constitution of the state or United States, and the acts of the legislature are to be upheld by the courts, unless it is plainly apparent that they conflict with the organic law, after solving all doubts in favor of the validity of the law. An-

nouncing this rule of construction as our guide, a rule that has been repeatedly announced by this court, we proceed to discuss further the act of the legislature under review, and the order of the trustees passed in pursuance of the act.

It appears from the complaint that some time after the legislature passed the law, and after the board of trustees, in order to carry out the act of the legislature, had passed the above order requiring this pledge to be taken, the complainant made application for admission to the University, and was declined admittance because he refused to sign the pledge which the trustees said he should sign before he could enter the University. When this was done complainant made application to the chancery court of Lafayette county for an injunction against the board of trustees of the University of Mississippi, asking that the court enjoin them from enforcing the order and require them to refrain from requiring him to sign the pledge incorporated in the application for admission to the University as a student, and prayed further that upon final hearing the act of the legislature in question be declared unconstitutional, as being in conflict with both the Constitution of the United States and the Constitution of the state of Mississippi, and that the order of the board be declared to be unreasonable, and *ultra vires,* etc. The application for the injunction sets out the fact that the University of Mississippi, was incorporated in 1844, and states many features of the incorporating act, which we deem unnecessary to rehearse here. The complaint then sets out the act of the legislature in full, and alleges that the complainant is now, and has been for several years, a member of what is known as the Kappa Sigma fraternity, and is affiliated and identified with the chapter at Millsaps College; that the Kappa Sigma fraternity is one of the fraternities embraced in the above-recited act. The complaint then sets out the order of the board of trustees, and alleges that in November, 1912, he applied to the chancellor of

the University for admission as a student, and that the chancellor presented him with the pledge required to be signed by students desiring to enter the University and requested him to sign as a prerequisite to admission as a student to the University; that complainant refused to do this, and the chancellor thereupon refused to admit him as a student in the University; and that the refusal was based alone upon the ground that complainant refused to sign the pledge. Complainant then alleges that he has never been a member of, nor has he affiliated with, or paid dues to, any chapter of any so-called Greek letter fraternity organized among the student body *of the University.* Complainant then alleges that he is affiliated with and pays dues to, the chapter of the Kappa Sigma fraternity at Millsaps College, and alleges that if he is admitted as a student at the University it is not his intention or purpose to encourage the organization, continuance, or maintenance of any Greek letter fraternity *in the University of Mississippi, or to affiliate with or pay dues to, or in any way support or encourage any such organization at the University, or be connected with any sort of active work, or meeting with any fraternity in the University.* He then alleges that the act of the legislature is in conflict with the Constitution of the state of Mississippi, and the Constitution of the United States; that it violates section 71 of the Constitution of the state, in that the title is not sufficient; that the act is further violative of sections 1 and 2 of the Constitution of the state of Mississippi, in that under the charter of the University and all statutes relating to it the government and discipline of the University, and the control of its students, is delegated to a board of trustees, and that such control is an executive and not a legislative function; that under section 2 of the Constitution of the state all power properly belongs to the board of trustees, and the legislature has no control over it; that as a citizen of the United States and the state of Mississippi, within the jurisdiction of the state, under the fourteenth amendment

to the Constitution of the United States, he is entitled
to the protection of life, liberty, and property, and the
pursuit of happiness, and entitled to the equal protection
of the law, and that the above act of the legislature and
the regulations of the board of trustees of the University
of Mississippi, refusing him admission to the University,
deprives him of his property, property rights, and lib-
erty, and denies him the equal protection of the law.
Complainant then proceeds to allege that the fraternity
of which he is a member has for its paramount purpose
the enforcement and promotion of good morals, the high-
est possible attainment and standing in class, good order
and discipline in the student body of the different col-
leges with which it is connected, and that section 2 of
the act of the legislature is unreasonable, in that it as-
sumes extraterritorial jurisdiction, in prohibiting any
member of any fraternity not connected with the Uni-
versity from receiving any class honors, diplomas, dis-
tinctions, etc., conferred by the University, and because
it prohibits any student of the University from affiliating
with or paying dues to, any chapter whatever, wherever
situated, *although entirely disconnected with the Univer-
sity.*

This bill was demurred to on many grounds, but we
see no occasion to go beyond the first. The first ground
of the demurrer challenges the fact that there is any
equity on the face of the bill. We think this challenge
brings into review, at once, the whole of this case. Coun-
sel for appellee stress the fact that the demurrer admits
all the allegations of the bill, and call the court's atten-
tion to the allegation wherein the high moral purposes
of the order to which complainant belongs is set out, and
argues that, whatever the general result may be, this
case is bound to be affirmed, because with these admis-
sions an institution cannot drive out of its halls, even be-
fore an act of the legislature, an order that is fruitful of
so much good as is claimed for the order to which com-
plainant belongs. But let it also be kept in mind that

the court takes judicial knowledge of the law, and reads into every alleged complaint the law of the land, and where the thing complained of, and against which relief is sought, is a thing which the law prohibits the complainant from doing, the court will not grant relief merely because complainant alleges that, if allowed to do the thing which the law says he must not, a great moral good will be accomplished. The allegation of fact amounts to nothing, when it merely shows that a complainant is seeking to disobey the law, no matter how strong the allegation that a great good will be accomplished if allowed to violate the law. We think this ends any discussion as to any admission of fact made by the demurrer.

In answer to that portion of the argument made by counsel for appellee that the act is void because the title is bad, we need only cite the case of *Mayor, etc., of City of Jackson* v. *State,* 59 South. 873, holding that the sufficiency of the title is a legislative and not a judicial question.

A further contention of appellee is that the act of the legislature violates sections 1 and 2 of the Constitution. We fail to see how the act of the legislature violates either section above-named. Section 1 of the Constitution merely provides for the distribution of the powers of government into three distinct departments, and section 2 prohibits any person, or collection of persons, being one or belonging to one of these departments of government, from exercising any powers properly belonging to either of the others. We do not see how either of these sections is invaded by this act. The legislature did nothing but pass a law for the regulation of the educational institutions of the state, and why it may not do so is something that a reading of the sections of the Constitution above referred to does not disclose to us. The trustees are mere instruments to carry out the will of the legislature in regard to the educational institutions of the state. Both the institutions and the trustees are under the absolute control of the legislature. The legis-

lature has the undoubted power to pass a law prohibiting
Greek letter fraternities from being organized or car-
ried on at any educational institution in the state. The
legislature has the right to say that any student desiring
to enter any educational institution of the state shall re-
nounce his allegiance to any Greek letter fraternity, *while
he* is a student in the state institution. The law requires
the trustees of the educational institutions of the state
to see that this act is enforced, and in order to do this
they have a right to exact of any student who desires to
enter, as a condition precedent to his entry, that he will
promise to obey the statute law of the state, and this
is all that the trustees have required. If complainant
desires to enter the University, all he has to do is to
promise obedience to the law of the state and the doors
of the University will be open to him.

But complainant says that by requiring him to sign
a pledge to obey the law of the state while he is a stu-
dent in the educational institutions of the state, and to
renounce his allegiance to, and affiliation with, secret so-
cieties at other institutions, he is denied a right guar-
anteed to him by the fourteenth amendment to the Con-
stitution of the United States. We fail to see any force
in this contention. The fourteenth amendment to the
Constitution of the United States was never intended to
act as an accomplice to any young man who wanted to
take advantage of the gratuitous advantages offered the
youths to obtain an education, and yet refuse to obey
and submit to the disciplinary regulations enacted by the
legislature for the welfare of the institutions of learn-
ing. The right to attend the educational institutions of
the state is not a natural right. It is a gift of civilization,
a benefaction of the law. If a person seeks to become
a beneficiary of this gift, he must submit to such condi-
tions as the law imposes as a condition precedent to this
right. The act in question is not class legislation. It
is quite the reverse, and seeks to destroy the possibility
of the existence of any class at the educational institu-
tions. No state or federal Constitution is violated by this

act in any way. Complainant is not deprived of any constitutional right, unless complainant can be said to have a constitutional right to breach the discipline of the school and set at naught the laws of the state. If it be true that the board of trustees, or the legislature, have extended the operation of the rule beyond what would seem to be the necessities, they have done it in order to effectuate the purpose of the legislature in prohibiting the existence of Greek letter fraternities at any of the educational institutions in the state. The trustees, and the legislature, both have the right to say that any student who desires to enter the University shall not only promise not to affiliate with any Greek letter fraternity while there, but that he shall not encourage the organization of any Greek letter fraternity elsewhere, by paying dues, etc., while a member of that institution. If this were not true, there might be organized at the University, although the dues were paid elsewhere, as complete a Greek letter fraternity, save the meetings, as if it were organized at the institution. Young men attending the educational institutions of the state, if allowed to hold their memberships in fraternities at other institutions while attending the state institutions, could as effectually carry on their fraternity relation as if an organization existed at the particular place. The legislature knew this, and to make the law effective prohibited all affiliation with secret societies while a student at a state institution.

In the case of *Purity Tonic Extract Co.* v. *Lynch,* 100 Miss. 650, 56 South. 316, the supreme court of this state and of the United States held that the legislature might, in order to make a police regulation effective, press the act beyond the seeming necessities in order to effectuate its purpose. The case of *Hobbs* v. *Germany,* 94 Miss. 469, 49 South. 515, 22 L. R. A. (N. S.) 983, is not a parallel case to this. The trustees in that case were not acting under the power conferred upon them by an act of the legislature. They were not trying to break up any secret orders; but the trustees of the *public schools,* to which a child has a constitutional right to attend between

certain ages, undertook to say that after the child had reached its home it should not be controlled by its own parents, but that they would establish rules that would reach into the fireside and control the child around the hearthstone of its own parents.    This court said this could not be done.    Many decisions are cited by appellee, but we refuse to follow any decisions that would hold this act unconstitutional.

We can see nothing in the act which is violative of any section of the Constitution.    Whether the act was a wise one, or an unwise one was a question for the legislature to determine.    The legislature is in control of the colleges and universities of the state, and has a right to legislate for their welfare, and to enact measures for their discipline, and to impose the duty upon the trustees of each of these institutions to see that the requirements of the legislature are enforced; and when the legislature has done this, it is not subject to any control by the courts.

The decree of the court below is reversed, the demurrer sustained, and the bill dismissed.

*Dismissed.*