GEORGE A. HOBBS ET AL. v. WILLIAM T. GERMANY ET AL.

[49 South. 515.]

1. PUBLIC SCHOOLS. *Equity. Injunction. Invalid school rule.*

Equity has jurisdiction to enjoin the trustees and teachers of a public school from enforcing an invalid rule.

2. SAME. *School officers. Code* 1906, §§ 4487, 4503. *Rules.*

Code 1906, § 4487, providing that the board of education shall decide all appeals from decisions of county school superintendents, and Code 1906, § 4503, providing that in all controversies arising under the school law the opinion of the superintendent shall be first sought and for appeals therefrom to the board of education, do not exempt school authorities, acting beyond the scope of their powers and in violation of law, from interference by the courts.

3. SAME. *Code* 1906, §§ 4525, 4623. *No control of pupils in their homes.*

Code 1906, § 4525, empowering trustees of public schools to prescribe and enforce rules for the government of schools and to suspend and expel pupils for misconduct, and Code 1906, § 4623, authorizing teachers to enforce such rules and hold pupils to account for disorderly conduct on the school premises and on the way to and from school, do not authorize the adoption of a rule requiring pupils to remain at home and study their lessons between designated hours in the evening.

FROM the chancery court of Lincoln county.

HON. G. GARLAND LYELL, Chancellor.

Germany and his infant son, Henry Germany, appellees, were complainants in the court below; Hobbs and another, teachers, and Vernon and others,—trustees of the separate school district of the town of Boguechitto, appellants, were defendants there. From a decree restraining the enforcement of a certain rule, regulating the hours of study for school children and providing that they should remain at home and study their lessons at night, and requiring defendants to reinstate the infant son,

Henry Germany, as a pupil in the school, defendants appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*Cassedy & Sumrall,* and *J. N. Yawn,* for appellants.

This appeal involves the power of the public school authorities to make and enforce a rule that all pupils of the school shall remain in their homes and study, at night. The bill prayed for an injunction against the trustees and teachers to prevent the enforcement of this rule, and also prayed that they be required to reinstate young Germany in the school during the pendency of the suit. The answer admitted the adoption of the rule and its proposed enforcement. The chancellor retained the injunction against the school authorities, and from a decree to such effect this appeal is prosecuted.

The chancery court had no jurisdiction in this matter. Code 1906, § 4503, provides an inferior tribunal to settle controversies arising under the school law and also provides for an appeal from the advice of the county superintendent to the state board of education. Code 1906, § 4487, provides that the state board of education shall decide all such appeals. Sec. 203 of our state constitution of 1890 provides for a board of education not only for the management and investment of school funds but also "for the performance of such other duties as may be prescribed." And sec. 204 of the state constitution provides that there shall be a county superintendent of education whose duty shall be prescribed by law. The legislature had the authority under the constitution to create this special school tribunal and to refer to such tribunal the settlement of all controversy arising under the school law.

It is true that every citizen has the right to send his children to the public school of the state under certain conditions and restrictions. But in the exercise of such right he must conform to the rules laid down by the legislature or by the tribunal to which the legislature has delegated authority in the mattter. If

the chancery court has been named as the tribunal for the exercise of such authority, the jurisdiction of such court would have been inclusive and unquestioned. But the legislature has, as shown above, expressly conferred exclusive authority upon the officers designated in Code 1906, § 4487–4503. Since the appellees did not avail themselves of this special tribunal, they can now have no standing in any court.

The powers and duties of the trustees are clearly set forth in Code 1906, § 4525. They have the undoubted authority to prescribe rules for the government of the schools in their district, and inasmuch as there is no question in this case as to whether the rules prescribed were inconsistent with those prescribed by the state board of education, the only other question presented naturally is whether the rule which they did prescribe was inconsistent with the law. Certainly the rule, which prescribed that all pupils of the school should remain in the home and study for two hours on the night of every school day, was not illegal in the sense that it was in conflict with the state constitution. The state, in providing a free school system, did so to enable the parent to perform his common law duty to educate his child, and the rules of the school are applicable to the parent as well as to the child. *Cartersville Board of Education v. Purse,* 101 Ga. 422. It is undoubted that the teachers and the board have jurisdiction over the pupil after school hours and in the interim of time between dismissal of the school and resumption of parental control. *Deskins v. Gose,* 85 Mo. 485. See also *Hutton v. State,* 23 Tex. Ct. App. 386; *Jones v. Cody* (Mich.), 62 L. R. A. 160; *Burdick v. Burdick,* 31 Ia. 562; *v. Seaver,* 32 Vt. 114.

At common law the presumption is that a rule of a board of school trustees is reasonable, and courts of law will not interfere with the enforcement thereof unless it is so palpably unreasonable as to be void. *Kinzer v. Toms,* 129 Ia. 441; *Wayland v. School Directors,* 7 L. R. A. (N. S.) 352; *Ferriter v. Tyler,* 48 Vt. 448.

*P. Z. Jones, Jno. A. McNair,* and *Luther L. Tyler,* for appellee.

The rule promulgated by the school authorities is illegal in that it seeks to usurp parental authority. *Gritt v. Snodgrass,* 66 Mo. 286. While a person who teaches a private school may say upon what terms he will receive the pupil and may, before receiving the pupil, demand that the parents shall surrender so much of his or her parental authority as not to allow the pupil during the term to attend social parties, balls or theatres except on pain of expulsion, this principle will not apply with regard to officers of public schools, since every child within the school age has a right, under the law, to attend the public school of his district. When the school room is entered by the pupil the authority of the parent ceases and that of the teacher begins, but when sent to his home the authority of the teacher ends and that of the parent resumes. Certainly neither teacher nor board of school trustees can have power or authority in law to adopt any rule governing the conduct of the pupil after the pupil enters the precincts of his own home and comes within the jurisdiction of parental control; with the exception as to some matters that are *per se* immoral and have a direct tendency to subvert and override the power of the teacher in the proper administration of school affairs.

The question of the reasonableness of the rule and regulation established by the school officers is one of law, to be decided by the courts. Mechem, Pub. Off. § 720; *Ferlich v. Michener,* 111 Ind. 472, 60 Am. Rep. 709, 11 N. E. 605; *Kinzer v. Independent School Dist. (Kinzer v. Toms),* 129 Iowa, 441, 3 L. R. A. (N. S.) 496, 105 N. W. 686, 6 A. & E. Ann. Cas. 996; *Rodgers v. Independent School Dist.,* 100 Iowa, 321, 69 N. W. 544; *Perkins v. Independent School Dist.,* 56 Iowa, 476, 9 N. W. 356; *Kinkle v. Saddler,* 97 Iowa, 526, 66 N. W. 765; *Board of Liquidation v. McComb,* 92 U. S. 531, 23 L. Ed. 623; *Noble v. Union River Logging R. C.,* 147 U. S. 172, 37 L. Ed. 126, 13 Sup. Ct. Rep. 271; 16 Cyc. Law & Proc. p. 36, § 4.

A school rule must be not only reasonable within itself but its enforcement must also be reasonable in the light of circumstances. *Fertich v. Michener,* 111 Ind. 472.

As to the jurisdiction of the chancery court, we contend that the question of the reasonableness of the rule and of the scope of authority to be exercised by the school trustees and teachers of the separate school districts, is one of law, and reviewable in the courts of the land without resort to the quasi judicial tribunal established by Code 1906, §§ 4487, 4503. The rule is uniform that if a remedy at law after statutory enlargement remains incomplete or otherwise inadequate, jurisdiction of equity is not ousted. 16 Ciy. 36, § 4. 1 Story, Eq. § 76.

Although the jurisdiction of the county superintendent and state board of education may be not concurrent but exclusive, even then the remedy as provided is now full, adequate and complete for the purpose of this case. The restraining power of equity extends through the whole range of rights and duties recognized by law. If the legal remedy does not fully come up to the requisition of the case, the exercise of equity jurisdiction may be proper and beneficial. 5 Pom. Eq. Jur. § 263; *Mills v. New Orleans Seed Co.,* 65 Miss. 391; 4 South. 298, *Irwin v. Lewis,* 50 Miss. 363; 16 Cyc. 41.

Mayes, J., delivered the opinion of the court.

The town of Boguechitto composes a separate school district, and the appellants are trustees thereof and teachers therein. This controversy grows out of the attempted enforcement of a certain rule, adopted by the teachers of the school and ratified by the trustees, by which it is required that all pupils of the school shall remain in their homes and study from seven to nine p. m., and the rule provides that any pupil who shall violate it shall be punished, either corporally or otherwise, in the discretion of the teacher.

Henry Germany, a boy about sixteen years of age and living with his father in the town of Boguechitto, was attending

this school. Some time during October, 1908, between the hours of seven and nine p. m., the father attended religious services held nearby in the town of Norfield, and took with him his son Henry, which the teachers considered a violation of the above rule. On the son's returning to school, the teachers, in pursuance of the purpose to enforce this rule, undertook to punish him for this breach of their rule, and gave him his choice of submitting to corporal punishment or confinement in the school-room for forty minutes during the noon hour for the period of five days. Under these facts, and being guilty of no other breach of the school law, young Germany refused to submit to either of the proposed punishments, whereupon the school authorities compelled him to withdraw from the public school. When this was done, the father, individually and the son, by the father as his next friend, began this suit in the chancery court, alleging that the adoption of the rule was beyond the lawful power of either the trustees or the teachers, and constitutes a usurpation of authority, not conferred upon them by law. The bill prayed for an injunction against the trustees and teachers enforcing this rule, and also prayed that they be required to reinstate young Germany in the school during the pendency of the suit and prohibited from inflicting any punishment because of his infraction of the rule. The answer admits the adoption of the rule and its proposed enforcement, and, the question being submitted to the chancellor on a motion to dissolve this injunction, the motion was overruled, and the injunction retained, from which judgment an appeal is prosecuted.

The sole question presented by the record is as to the power of the school authorities to make and enforce this rule. The first cotention is that the chancery court is without jurisdiction to entertain this proceeding, and Code 1906, § 4503, is cited as authority for this contention. That section is as follows: "In all controversies arising under the school law, the opinion and advice of the county superintendent shall first be sought, from whose decision an appeal may be taken to the state

board of education upon a written statement of the facts, certified by the county superintendent or by the secretary of the trustees." And again Code 1906, § 4487, provides:. "The board of education shall decide all appeals from decisions of county superintendents, or from the decisions of the state superintendent; but all matters relating to appeals shall be presented in writing, and the board's decision shall be final." It is argued that under these two sections all controversies which in any way involve any question connected with the government of the schools must be first submitted to the county superintendent, and from his decision an appeal can be taken to the state board of education; but, where the state board of education decides it, the decision is final. And, say counsel for appellant, since the legislature has provided this exclusive forum to settle all school controversies, and the appellees have not availed themselves of this forum, they have no standing in any court.

This argument may be sound when applied to any controversy arising over any matter coming within the scope of the powers delegated by law to the school authorities; but the school authorities are not exempted from a supervision by the courts by virtue of sections 4503 and 4487 of the Code of 1906, constituting the county superintendent and the state board of education the arbiters of controversies arising under the school law, in any case where the school authorities are acting beyond the scope of their power and in violation of law. Whenever a question arises as to whether or not the power of the school authorities to make a certain rule or regulation is reasonably within the scope of the power conferred on them by law, the question is undoubtedly subject to inquiry by the courts. This was expressly held in the case of *Kinzer v. Toms,* 129 Iowa, 441, 105 N. W. 686, 3 L. R. A. (N. S.) 496, and in that case the court was construing a statute very similar to the provision of the statute now under consideration. Many other authorities to the same effect are cited in the brief of counsel for appellee, to which we here refer. In the case of *Perkins v. School District,* 56 Iowa, 476, 9 N. W. 356,

where the statute provided that in any controversy with the school directors an appeal should be taken to the county superintendent, and thence to the superintendent of public instruction, where a controversy arose as to the power of the school directors to make a certain order, the court said: "The courts of the state are the arbiters of all questions involving the construction of the statutes conferring authority upon officers and jurisdiction upon special tribunals. It was certainly never the intention of the legislature to confer upon school boards, superintendents of schools, or other officers discharging *quasi* judicial functions, exclusive authority to decide questions pertaining to their jurisdiction and the extent of their power. All such questions may be determined in the courts of the state. Hence, when the rights of a citizen are involved in the exercise of authority by a school officer, the courts may determine whether such authority was lawfully exercised."

We are not concerned in this case with what powers the legislature of the state may confer upon trustees and teachers of public schools; but we are now only concerned with the powers which it has conferred upon them. As to the trustees, their powers and duties are clearly pointed out in Code 1906, § 4525, which are: "(a) To prescribe and enforce rules, not inconsistent with law or those prescribed by the state board of education, for their own government and government of schools," etc. "(f) To suspend and expel pupils for misconduct." By these sections it is seen that the trustees have a limited, and not absolute, authority in making and enforcing rules for the government of the schools, and the teachers' authority in this particular is narrower than is that of the trustees. The trustees can make and enforce no rule inconsistent with the law. The power to do this is expressly prohibited in paragraph "a," § 4525 of the Code of 1906. Certainly a rule of the school, which invades the home and wrests from the parent his right to control his child around his own hearthstone, is inconsistent with any law that has yet governed the parent in this state, and the writer of this opinion dares hope

that it will be inconsistent with any law that will ever operate here so long as liberty lasts, and children are taught to revere and look up to their parents. In the home the parental authority is and should be supreme, and it is a misguided zeal that attempts to wrest it from them. By Code 1906, § 4623, the teachers are given authority "to enforce the rules and regulations prescribed for schools, and to hold pupils to a strict account for disorderly conduct on the way to and from school, on the playgrounds, or during recess, and suspend, for good cause, any pupil from school, and report such suspension to the board of trustees for review," etc. These sections contain all the power the legislature has seen fit to give to the trustees or teachers. It may not be easy to say with exact precision what rules may or may not be adopted and enforced by the school authorities for the government of a school. With the general powers we are not here concerned. We are simply called upon to decide this concrete case, and unhesitatingly say that the rule attempted to be enforced is a nullity and beyond the power of the trustees to adopt or the teachers to enforce.

The case of *Dritt v. Snodgrass,* 66 Mo. 286, 27 Am. Rep. 343, is an authority very much in point here. In that case the school directors adopted a rule prohibiting pupils from attending social gatherings, and the court said: "The directors of a school district are invested with the power and authority to make and execute all needful rules and regulations for the government, management, and control of such shcool as they may think proper, not inconsistent with the laws of the land. Under the power thus conferred, the directors are not authorized to prescribe a rule which undertakes to regulate the conduct of the children within the district, who have a right to attend the school, after they are dismissed from it and remitted to the custody and care of the parent or guardian. They have the unquestioned right to make needful rules for the control of the pupils while at school, and under the charge of the person or persons who teach it, and it would be the duty of the teacher to

enforce such rules, when made. While in the teacher's charge, the parent would have no right to invade the schoolroom and interfere with him in its management. On the other hand, when the pupil is released and sent back to its home, neither the teachers nor directors have the authority to follow him thither, and govern his conduct while under the parental eye. It certainly could not have been the design of the legislature to take from the parent the control of his child while not at school, and invest it in a board of directors and teachers of a school. If they can prescribe a rule which denies to the parent the right to allow a child to attend a social gathering, except upon pain of expulsion from a school which the law gives him the right to attend, may they not prescribe a rule which would forbid the parent from allowing the child from attending a particular church, or any church at all, and thus step *in loco parentis* and supersede entirely parental authority? For offenses committed by the scholar while at school he is amenable to the laws of the school; but under the charge of the parent or guardian he is answerable alone to him. A person teaching a private school may say upon what terms he or she will accept scholars, and may demand, before receiving a scholar to be taught, that the parents shall surrender so much of his or her parental authority as not to allow the scholar during the term to attend social parties, balls, theaters, etc., except on pain of expulsion. This would be a matter of contract, and no one has a right to send a scholar to such a school except on the terms prescribed by those who teach it. This is not so in regard to public schools, which every child within school age has a right, under the law, to attend, subject, while so attending, to be governed by such needful rules as may be prescribed. When the schoolroom is entered by the pupil, the authority of the parent ceases, and that of the teacher begins. When sent to his home, the authority of the teacher ends, and that of the parent is resumed. For his conduct when at school he may be punished, or even expelled, under proper circumstances. For his conduct when at home, he is subject to

domestic control. The directors, in prescribing the rule that scholars who attend a social party should be expelled from school, went beyond their power and invaded the right of the parent to govern the conduct of his child when solely under his charge."

It may be that the school authorities would have a right to make certain regulations and rules for the good government of the school, which would extend and control the child even when it has reached its home; but, if that power exists, it can only be done in matters which would *per se* have a direct and pernicious effect on the moral tone of the school, or have a tendency to subvert and destroy the proper administration of school affairs. We shall not undertake in this opinion, to say in what such things shall consist in order to justify a regulation of the school that may reach in the home and have its effect there. When such a case comes before the court, it will be time enough to decide how far this authority may be extended.

The distinguished chancellor was eminently correct in the decree establishing the supremacy of the mother and father in their own home as regards the control of their children, thereby sustaining the injunction, reinstating young Germany in the school, and declaring the regulation a nullity.

*Affirmed.*