HARRY A. LEE et al., Appellants, v. MRS. A. H. HOFFMAN et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Pupils, Conduct and Dis-
1   cipline—Expulsion—Anti-Fraternity Act. A school board may, under rules authorized by statute, and on due hearing and investigation, validly expel a pupil from the public school because of the pupil's membership in a fraternity. (Sec. 2782-a, Code Supp., 1913.)

**CONSTITUTIONAL LAW:** Principles of Construction—General
2   Principles. The following principles of statutory construction are recognized:
    1. That a law is unreasonable merely does not render it unconstitutional.
    2. The legislature may validly delegate legislative and judicial powers.
    3. Statutes will not be invalidated on the ground that personal rights are interfered with, unless the interference is, beyond reasonable doubt, purely fanciful and arbitrary.
    4. A statute will not be declared unconstitutional on a borrowed objection—a grievance which can occur only to one not complaining.

**CONSTITUTIONAL LAW:** Distribution of Powers—Delegation of
3   Unregulated Discretion—Schools and School Districts. The Anti-

fraternity Act, providing that school boards may, under proper rules and regulations, and after due investigation, expel from the public schools pupils who hold membership, etc., in fraternities, is not subject to the vice of being an unbridled delegation of power to school boards.

CONSTITUTIONAL LAW: Equal Protection of Law—Arbitrary Classification—Schools and School Districts. The primary duty of the legislature to classify—to say who shall and who shall not come under the provisions of an enactment—will not be interfered with by the court unless the classification is so *palpably* arbitrary that there can be no room for doubt that discretion has been abused. *Held*, the statute relating to the expulsion from public schools of pupils who belong to fraternities provides no arbitrary classification. (See Sec. 2782-a, Code Supp., 1913.)

CONSTITUTIONAL LAW: Personal, Civil, and Political Rights— Paternalism—Schools and School Districts. A statute is not unconstitutional because it is paternalistic. So held with reference to the statute which authorizes school boards, under proper rules, etc., and after investigation as to the facts, to expel from the public schools pupils who hold membership in fraternities. (Sec. 2782-a, Code Supp., 1913.)

CONSTITUTIONAL LAW: Due Process—Anti-Fraternity Act—Expulsion from School. Notice to the parents or guardians of pupils in public schools, with opportunity for hearing, preparatory to expelling such pupils from the schools because of membership of the pupils in fraternities, constitutes due process.

*Appeal from Polk District Court.*—Lawrence DeGraff, Judge.

March 5, 1918.

The plaintiffs and others in the same class, and all minors, were by the defendants excluded from the benefits of a public school, under a rule adopted by the defendant board. A petition seeking a mandatory order to restore the plaintiffs to admission in said schools was dismissed, and the plaintiffs appeal.—*Affirmed.*

*O. M. Brockett,* for appellants.

*Stipp, Perry, Bannister & Starzinger,* for appellees.

SALINGER, J.—I. The argument of appel-

**1. SCHOOLS AND SCHOOL DISTRICTS: pupils, conduct, and discipline: expulsion: Anti-Fraternity Act.** lant assumes that legislative enactments are open to every objection that may be made to a mere rule or to an ordinance. And in support of attack upon the statute upon which appellees rely for authority to do what they did, appellant refers us to cases which nullify mere rules and ordinances, and to general language in these cases which, broad as it is, must still be limited to rules and ordinances. See *Yick Wo v. Hopkins*, 118 U. S. 356 (6 Sup. Ct. Rep. 1064) ; *Bear v. City of Cedar Rapids*, 147 Iowa 341; *Cicero Lbr. Co. v. Town of Cicero*, 176 Ill. 9 (51 N. E. 758) ; *City of Richmond v. Dudley*, 129 Ind. 112 (28 N. E. 312) ; *State v. White*, 82 Ind. 278, 286.

**2. CONSTITUTIONAL LAW: principles of construction: general principles.** Some objections good as to ordinances or rules are not valid objections to a statute. Wherefore, we will at this time deal with the objections made by appellant as though they were addressed to the statute alone. This eliminates two objections often lodged against ordinances or rules: to wit, that grant from the legislature is lacking; and mere unreasonableness. An ordinance or a rule may be void because the legislature has not authorized it. Manifestly, every statute is authorized by the legislature, and no statute is invalid because no other statute grants power to enact it. Again, no legislative enactment is void merely because it is unreasonable. It is a universal rule that unreasonableness in a statute is of no importance except on the question of what was intended by the legislature; that, if there is no room for construction, the law is what the act says, no matter how unreasonable that is. The remedy is not to substitute what the courts deem reasonable, but an appeal to the legislature. That a law is unreasonable, merely, does not make it unconstitutional.

II. Appellants contend that the statutes in question are

invalid because they delegate certain powers. It is true they do, in a sense, delegate both legislative and judicial power, and we think that this is permissible. As far back as *Wayman v. Southard,* 10 Wheat. (U. S.) 1, Chief Justice Marshall said that Congress can delegate "what powers it may rightfully exercise itself;" and grants of legislative power to municipal corporations and administrative boards have uniformly been sustained. See *Martin v. Witherspoon,* 135 Mass. 175; *Sabre v. Rutland R. Co.,* 86 Vt. 347 (85 Atl. 694) ; *State v. Superior Court,* 67 Wash. 37 (120 Pac. 861) ; *Denny v. Des Moines County,* 143 Iowa 466, at 474; *In re Assessment Sioux City Stock Yards,* 149 Iowa 5, 11. Acts have been upheld which authorized medical boards to refuse or revoke certificates of qualification for certain causes. *France v. State,* 57 Ohio St. 1. It is competent for the legislature to delegate to a county auditor the power to determine the character of the security to be given for damages resulting from the taking of private property for drainage purposes. *Sisson v. Supervisors,* 128 Iowa 443.

If there be involved a delegation of judicial power, such delegation will not avoid the statute. See *In re Assessment Sioux City Stock Yards,* 149 Iowa 5, 11; *State v. Hawkins,* 44 Ohio St. 98; *Hunter v. Colfax Cons. Coal Co.,* 175 Iowa 245, 310; *State v. Mason City & Ft. D. R. Co.,* 85 Iowa 516; *State Sav. & Com. Bank v. Anderson,* 165 Cal. 437 (132 Pac. 755) ; *In re Kollock,* 165 U. S. 526 (17 Sup. Ct. Rep. 444) ; *Union Bridge Co. v. United States,* 204 U. S. 364 (27 Sup. Ct. Rep. 367) ; *President of Monongahela Bridge Co. v. United States,* 216 U. S. 177 (30 Sup. Ct. Rep. 356).

3. CONSTITUTION-
AL LAW : dis-
tribution of
powers : dele-
gation of un-
regulated dis-
cretion :
schools and
school districts.

We gather the complaint is not that either legislative or judicial powers, or both, are delegated, but that the delegation is arbitrary and unregulated. For instance, it is said there is an attempt to delegate arbitrary and unregulated discretion to

school boards to ·determine whether or not the youths who are members of certain fraternities or societies 'shall be admitted to the privileges and benefits of public schools; that, as to any who are already admitted, these statutes give unregulated and unlimited power to determine which of them, having such associations, shall be admitted and which excluded; and because unregulated, undefined, and unlimited discretion is given to sanction or refuse to sanction certain sororities or associations.

The statutes in question are Section 2782-a, Code Supplement, 1913, as amended by Act of the 37th General Assembly.

The powers delegated are not "blanket powers." The right to act at all is limited (a) to those who are pupils; (b) to pupils who become members of or solicit other pupils to become members of any fraternity or society wholly or partially formed from pupils, or to take any part in the organization or formation of any such society; (c) to determining whether the inhibition may be waived as to some societies or associations; (d) to enforce the statutes by the adoption of rules and regulations carrying penalties which the statutes specifically describe; (e) they provide for an investigation, and that the penalty shall be inflicted only after such investigation has satisfied a majority of the directors that the statute has been violated.

Whatever objection there may be to this, it is not that it is an unbridled delegation. It could not well be more specific, without making it unnecessary to delegate at all. If the legislature has power to delegate, then, of necessity, it has power to leave to others the details to effectuate the declared legislative policy. As said, if this be not so, the legislature could do nothing but make the rules and prescribe each step to be taken. On this theory, it *can* delegate provided it delegates nothing.

It is true, these statutes also contain broad provisions

giving the board full power and authority to make, adopt,
and modify all rules and regulations which, in their judg-
ment and discretion, may be necessary for the proper gov-
erning of the school, and they authorize punishment for vio-
lation of any such rule.   But this general language must be
limited by the entire scope and purpose of the enactment,
which is not to deal with all possible rules, but with rules
to enforce the provisions of these statutes.   Be that as it
may, nothing but an enforcement of rules in aid of these
statutes is complained of.   It will be time to deal with the
validity of the broader language in these statutes when there
shall be before us an attempt to enforce some rules not spe-
cifically authorized by these.   We shall have occasion to
speak later to what the attitude of the courts should be
where unconstitutionality is asserted because of something
that *might* be done.

4. CONSTITUTION-
AL LAW: equal
protection of
law: arbitrary
classification:
schools and
school dis-
tricts.

III.   One complaint is that the statute
works an arbitrary differentiation and dis-
crimination—is arbitrary class legislation—
because it authorizes exclusion for such af-
filiation.   The argument is that there is an
arbitrary grouping, in that pupils who belong to no such so-
cieties, and those that affiliate with them on sanction, are the
only ones who retain the privilege of school.   We do not
think that such a classification constitutes inhibited "class
legislation."   The statute avoids all that constitutes such
legislation.   It puts all who are of the class to be affected
into that class.   It includes no one therein who should not
be.   It deals with none save enrolled pupils.   Only such
pupils need the sanction of the board to affiliate with these
societies.   All of them need it.   It attempts no distinction
between those who are affected.   It makes no arbitrary dis-
tinctions, say, that pupils having red hair, or those of Eng-
lish parentage, may affiliate without obtaining the sanction.
Waiving the distinction between statutes and rules, to which

we have adverted, and accepting cases nullifying rules at their broadest, and we find that, when mere rules were annulled, it was because of discriminations as unjustifiable as those based on the color of hair, or nationality. In *Clark v. Board of Directors*, 24 Iowa 266, there was a discrimination against pupils because they were negroes, and all said for the right to enjoy school privileges must be read in the light of that fact. What the case turns on is not shown by general language concerning abstract rights, but by declarations that the discretion of the board does not justify assigning to different schools because parents happen to be Irish or German or Catholic or Protestant; that, if it should happen that there be one or more poorly clad or ragged children in the district, and public sentiment was opposed to the intermingling of such with the well-dressed youths of the district in the same school, "it would not be competent for the board of directors in their discretion to pander to such false public sentiment, and to require the poorly clothed children to attend a separate school." *Smith v. Directors of the Ind. School Dist.*, 40 Iowa 518, and *Dove v. Independent School Dist.*, 41 Iowa 689, also deal wholly with the right to exclude pupils because of their color. In *Perkins v. Board of Directors*, 56 Iowa 476, which is, in effect, condemned is a rule which would exclude a pupil because damages for breaking a window were not paid. It is held that breaking a window glass by accident and without evil purpose will not warrant exclusion, and said that "plaintiff was expelled, not because he broke the glass, but because he did not pay the damage sustained by the breaking. His default in this respect was no breach of good order or good morals. The rule requiring him to make payment is not intended to secure good order, but to enforce an obligation to pay a sum of money."

The statute does not deny the equal protection of the law by making an arbitrary differentiation, even if a statute had

no better standing than a mere rule. But it has. Unlike a mere administrative board, the legislature is clothed with a large discretion in determining upon classification and making differentiations.

"The power to classify is primarily in the legislature, the courts accord it the widest latitude in performing this function; and a classification adopted by it will be sustained unless it is so palpably arbitrary as that there is no room for doubt that discretion has been abused by indulging in an unjustifiable discrimination." *Hunter v. Coal Co.*, 175 Iowa, at 288.

The courts do not and should not readily find that the legislature abused this discretion, and the statute should not be set aside by the judiciary unless "it is unmistakably and palpably in excess of the legislative powers." *McLean v. State of Arkansas*, 211 U. S. 539, 547. These statutes are clearly within that discretion.

5. CONSTITUTION-AL LAW: personal, civil, and political rights: paternalism: schools and school districts.

IV. We take it that what is really complained of is not so much arbitrary classification or differentiation, but that the requirements of the statute work an arbitrary and capricious destruction of personal rights secured by fundamental law, by means of exercising an utterly unjustified paternalism. Of course, there are limitations upon the power of the legislature to abrogate personal rights. But the courts will not annul a statute unless the interference is, beyond reasonable doubt, purely fanciful and arbitrary. *Mathison v. Minneapolis St. R. Co.*, 126 Minn. 286 (148 N. W. 71); *Sexton v. Newark Dist. Tel. Co.*, 84 N. J. L. 85 (86 Atl. 451). The judicial arm will not interfere "unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed, without due process of law." *Gundling v. Chicago*, 177 U. S. 183.

As to tax laws, it has been held that they will not be annulled "if there be the least possibility that they will be promotive in any degree of the public welfare." *Booth v. Town of Woodbury,* 32 Conn. 118, 128. To like effect is *Brodhead v. City of Milwaukee,* 19 Wis. 658, 686; *Sharpless v. Mayor, etc., of Philadelphia,* 21 Pa. St. 147, 174; *Cunningham v. Northwestern Imp. Co.,* 44 Mont. 180 (119 Pac. 554). Even as the legislature has a large discretion in making classes, it has it in determining what is for the public welfare; and that discretion has sustained exercises of paternalism in infinite variety. See *McGuire v. Chicago, B. & Q. R. Co.,* 131 Iowa 340, 360. It is a fair summary of the case law that no statute is violative of the Constitution if it have for its legitimate object anything that may fairly be said to be for the good of the state, or promotive of good order, good morals, or the education of the citizen. *Giozza v. Tiernan,* 148 U. S. 657, at 662. That the legislature may be paternal is not open to doubt in this day. The question is whether the statutes in consideration are an unwarranted paternalistic regulation. Their purpose is manifest. They declare that affiliations of pupils with certain associations should be restricted, and have the approval of the school authorities, because, in the judgment of the legislature, the privilege of the membership in a public school will be or may be less valuable if such affiliations are not restricted. It is one of many attempts to check youth in wasting its assets, and to keep what the state bestows at its highest efficiency. It is directed against what is matter of common knowledge: that activity in matters other than the school work will divide the interest of the pupil, and subtract from the work that should be devoted to the school curriculum; and that affiliation with a society, no matter how innocent in itself, still has a tendency to breed hatreds and jealousies, because the society may exclude some, while receiving others; that the tendency of such affiliations is to breed division and class

hatred. If the state may compel the solvent bank to help pay losses sustained by depositors in insolvent banks; if it may enact workmen's compensation laws, in order that the workman shall have no strained relations with his employer, nor become embittered towards society because, though an industry has crippled him, it has paid him nothing; if acts aiming to make better citizens by diminishing the chances of pauperism are sustained; if it is competent for the state to protect the minor from impoverishing himself by contract: it surely is not an arbitrary exercise of the functions of the state to insist upon methods that will tend to prevent the educational privileges furnished by the state from being in any degree wasted. We hold that these statutes are not unduly paternalistic, and that it is their ultimate object to raise the school privilege to its highest possible efficiency.

There is nothing in *State v. White,* 82 Ind. 278, 287, which in the least militates against our conclusion that these statutes are a proper regulation. The case involves a consideration of a board rule. It distinguishes between the right to compel renunciation of a society already affiliated with as a condition to entering a school, and the control of the pupil after he has once entered. Even as to a rule, the case expressly holds that, after the status of the pupil is established, such rules as this statute makes are valid. While *Kinzer v. Directors of Ind. School Dist.,* 129 Iowa 441, uses some broad language which would be fairly controlling if undue paternalism were indulged in, the decision itself is against the appellants, and it upholds a football-playing regulation made by rule only, because of the general discretion lodged in boards of directors.

The case of *Waugh v. Board of Trustees of Univ. of Miss.,* 105 Miss. 623 (62 So. 827), and the consideration of that case in the Supreme Court of the United States, 237 U. S. 589 (35 Sup. Ct. Rep. 720), rule every material point in this appeal against the appellants; and we cannot agree that

there is any difference in facts exhibited which makes these decisions inapplicable here. It is said that the writer who spoke for the Mississippi Supreme Court in the *Waugh* case also spoke for that court in *Hobbs v. Germany,* 94 Miss. 469 (49 So. 515), and that the holding in the last case is such as that the opinion in the *Waugh* case cannot mean what it plainly says. The sum of such contention is that the *Hobbs* case is in conflict with the *Waugh* case. We might follow the *Waugh* case rather than the *Hobbs* case, if the two did conflict. But it is a sufficient answer that the two cases are not in conflict. The *Waugh* case holds that the state has power to regulate affiliation with certain fraternities. The *Hobbs* case holds that, if the school officers act beyond their power, and in violation of law, the courts may interfere, even though the statute provides for an appeal to a county superintendent.

V. We decline to go extensively into the question of what some school boards *might* do under statutes such as these. We do not care to dwell at length upon the claim that affiliation with religious societies might be interfered with, upon a liberal reading and enforcement of these statutes. It is not amiss to say that the Constitution guarantees religious liberty, and that we may assume the legislature did not intend by these statutes to override that constitutional guaranty. Neither is it amiss to add we are not prepared to hold that the school authorities can in no manner regulate the activities of pupils in associations whose object is to advance religion. See *Donahoe v. Richards,* 38 Me. 376. It will be time enough for us to determine whether these statutes have unduly interfered with religious liberty when someone affected shall complain that affiliation with some society for the promotion of religion is being interfered with. The courts are, and should be, reluctant to declare a law unconstitutional. From this it has followed that they will not consider a constitutional challenge unless the

case cannot be decided without considering it. The applica-
tion of this rule might well operate to deny these appellants
the right to be heard at all. For all we know, there might
have been no constitutional question to present, had appel-
lants asked the sanction of the school authority. Had the
sanction been given, there would have been no suit. We do
not mean to say that one may not urge a statute is un-
constitutional without first doing what such statute *might*
require. If this statute demanded that the applicant for
permission to affiliate should pay $10,000 into the school
fund, such a statute would be void, and could be attacked
though payment of the fee would make attack needless. But
there is nothing unconstitutional about requiring an applica-
tion for permission to join a society. And if the courts,
instead of hunting opportunities to declare statutes void,
seek in every reasonable way to avoid the necessity for pro-
nouncing upon their validity, no good reason is perceivable
why they may not decline to interpret the Constitution for
suitors who have hunted, instead of attempted to avoid, a
controversy over the Constitution,—who are before the court
only because they refused to do what, if done, might have
made it unnecessary for them to ask the courts to construe
the Constitution.

VI. The rule adopts the words of the
statute. It adds that the principal shall re--
port to the board the names of all students
who, according to the judgment of the prin-
cipal, in any way violate said statute provi-
sion; that the board shall, through its proper officers, notify
the parents or guardians of all such pupils, calling attention
to the supposed violation of such law; that if, within a rea-
sonable time, a satisfactory explanation is not given to the
board, the superintendent and principal shall suspend any
pupils guilty of violating any of the provisions of the statute.
Since the rule is substantially nothing more than a re-enact-

6. CONSTITUTION-
AL LAW : due
process :
Anti-Frater-
nity Act: ex-
pulsion from
school.

ment of the statute, and the creation of perfectly natural methods for performing the duties placed upon the board by the statute, and since the statute itself is valid, the rule cannot be invalid for being either unreasonable or in excess of statute authority.

The only remaining contention is that no provision is made for a hearing, and that, therefore, there is a denial of due process of law. There is a provision for notifying the parents and guardians, and for action if no satisfactory explanation be made. We think this is sufficient to save the rule against objection that is works a denial of due process. See *Butterfield v. Stranahan,* 192 U. S. 470 (24 Sup. Ct. Rep. 349) ; *Cunningham v. Northwestern Imp. Co.,* 44 Mont. 180 (119 Pac. 554, 555) ; *Bank v. Anderson,* 165 Cal. 437 (132 Pac. 735) ; *Opinion of the Justices,* 209 Mass. 607 (96 N. E. 308) ; *Borgnis v. Falk Co.,* 147 Wis. 327 (133 N. W. 209).

We are of opinion that the judgment below should be, and it is,—*Affirmed.*

PRESTON, C. J., LADD and EVANS, JJ., concur.