PAUL ROTH and CYRIL BRINKER, d/b/a Breda Creamery, Breda, Iowa, appellees, v. SAC CITY STATE BANK, appellant.

No. 51391.

(Reported in 131 N.W.2d 250)

NOVEMBER 17, 1964.

REHEARING DENIED FEBRUARY 9, 1965.

Vest & Mather, of Sac City, for appellant.

Wunschel & Schechtman, of Carroll, for appellees.

PETERSON, J.—This is an action against defendant-bank, alleging violation of section 541.201, 1962 Code. The case was tried to the court without a jury. Judgment was rendered in favor of plaintiff for $7396.20. Defendant appeals.

Defendant assigns a number of alleged errors, but the substance of defendant's claim is that the court should have considered the case in the same manner that other suits for damages are considered; that the burden of proof was upon plaintiff to establish the elements of negligence, absence of contributory negligence, and the amount of damages. Appellant also raises question of disposition of dividends from Priebe & Sons bankruptcy.

Plaintiff's claim is that section 541.201 of the Code controls the relationship between the parties; that defendant violated the provisions of said section and was liable for the amount of checks or drafts involved.

I. Paul Roth and Cyril Brinker were doing business at Breda, Iowa, under firm style and name of Breda Creamery. Breda is a small town located about 15 miles south of Sac City. Defendant maintains and has maintained for many years a state bank in Sac City, the county seat of Sac County.

For some years prior to September of 1961, the firm of Priebe & Sons, Inc., maintained its principal office in Chicago,

Illinois, for the purpose of buying and selling of poultry and eggs at wholesale. They operated through western Iowa and bought large quantities of eggs almost daily from plaintiff. Whenever plaintiff sold a quantity of eggs to Priebe & Sons, Inc., they executed a draft or check in the following form, which is Exhibit "A" in the record:

"Priebe & Sons, Inc.      No 1847
   Produce Department      2
    Sac City, Iowa      72–2065
             713

        Sac City, Iowa   Sept. 13, 1961

PAY TO THE
  ORDER OF   Breda Creamery    $1204/61
             2 45

    1204 DOLS 61 CTS    1207.06 DOLLARS

   Payable Through     Priebe & Sons, Inc.
   Sac City State Bank
    Sac City, Iowa    By   Thelma McMahon"

Exhibits "B" to "H" inclusive are in similar form.

Exhibit "B" in the amount of $665.78 was dated September 14; received by defendant on September 21; Exhibit "C" in the amount of $694.36 was dated September 15 and received by defendant on September 21; Exhibit "D" in the amount of $909.57 was dated September 16 and received by defendant September 21; Exhibit "E" in the amount of $878.97 was dated September 18 and received by defendant September 21; Exhibit "F" in the amount of $1208.68 was dated September 19 and received by defendant September 25; Exhibit "G" in the amount of $1105.29 was dated September 20 and received by defendant September 25; Exhibit "H" in the amount of $728.94 was dated September 21 and received by defendant September 25.

As it is the heart and material part of the case at bar we quote section 541.201 of 1962 Code of Iowa:

"In any case in which a bank receives, other than for immediate payment over the counter, a demand item payable by, at or through such bank *and gives credit therefor before midnight of the day of receipt, such bank may have until midnight of its next business day after receipt within which to dishonor or refuse payment of such item.* Any credit so given, together with all related entries on the books of the receiving bank, may be revoked by returning the item, or if the item is held for protest or at the time is lost or is not in the possession of the bank, *by giving written notice of dishonor, nonpayment, or revocation; provided that such item or notice is dispatched in the mails or by other expeditious means not later than midnight of the bank's next business day after the item was received.* For the purpose of determining when notice of dishonor must be given or protest made under the law relative to negotiable instruments, an item duly presented credit for which is revoked as authorized by this section shall be deemed dishonored on the day the item or notice is dispatched. A bank, revoking credit pursuant to the authority of this section, is entitled to refund of, or credit for, the amount of the item.

"For the purposes of this section: (1) An item received by a bank on a day other than its business day, or received on a business day after its regular business hours or during afternoon or evening periods when it has reopened or remained open for limited functions, shall be deemed to have been received at the opening of its next business day; (2) the term 'credit' includes payment, remittance, advice of credit, or authorization to charge and, in cases where the item is received for deposit as well as for payment, also includes the making of appropriate entries to the receiving bank's general ledger without regard to whether the item is posted to individual customers' ledgers." (Emphasis ours.)

The customary bank procedure which had been carried on for a long period of time between the parties was as follows:

1. Checks were deposited by plaintiff in Breda Savings Bank at Breda.

2. The Breda bank then mailed them to Iowa-Des Moines National Bank at Des Moines.

3. The Iowa-Des Moines National Bank immediately sent them to defendant.

Defendant had no account on its books with Priebe & Sons, Inc., nor with plaintiff nor with Breda Savings Bank. Its correspondent bank was Iowa-Des Moines National Bank at Des Moines and the account as to plaintiff's checks and transactions with defendant were kept on said account.

4. Defendant, therefore, gave Iowa-Des Moines National Bank credit for the Priebe checks when they came back to defendant from Des Moines.

5. The checks were then immediately sent by defendant to Harris Bank & Trust Company of Chicago.

6. The Harris Bank & Trust Company immediately sent the checks by messenger to the principal office of Priebe & Sons, Inc., in Chicago, where the messenger received a check or cash in payment of the check or checks he delivered.

7. Harris Bank & Trust Company of Chicago then sent the money to Iowa-Des Moines National Bank at Des Moines.

8. The Iowa-Des Moines National Bank then sent the money to defendant; and received credit for the remittance.

For this bank procedure defendant received the sum of ten cents for each item handled.

Hundreds of transactions of this nature were made throughout the months and perhaps years that Priebe & Sons, Inc., had a purchasing department in Sac City. No delays were occasioned and there was no break in the procedure as long as Priebe & Sons, Inc., paid its checks, perhaps daily, to the Harris Bank & Trust Company messenger at Chicago.

A problem then arose because the eight checks involved in this action, when presented by Harris Bank & Trust Company to Priebe & Sons, Inc., at Chicago, were dishonored. It was the morning of September 25, 1961, that Harris Bank & Trust Company advised defendant by telephone that the checks had been dishonored.

On the same day, before notifying plaintiffs or the Breda Savings Bank of the dishonored checks, defendant commenced an action at Sac City against Priebe & Sons, Inc., and attached a quantity of eggs for the sum of $4385, which had been paid by

defendant for Priebe checks over the counter. This money was later secured by defendant and was used for the benefit of the bank and not for the benefit of any depositors. On the same date of September 25 defendant had received some Priebe checks from Iowa-Des Moines National Bank which had been given to plaintiff on previous dates. Although defendant had received notice by telephone from Harris Bank & Trust Company on said date as to Priebe checks being dishonored, it still sent these checks in on September 25 hoping that the matter had cleared itself. Defendant received formal notice of dishonor of all checks from Harris Bank & Trust Company on September 27. Priebe & Sons, Inc., filed bankruptcy in Chicago on September 29 and were adjudicated bankrupt on March 9.

Since the money on the eight checks involved in this action was not received by Iowa-Des Moines National Bank as customary, defendant could not give the bank credit for the amount involved, which totaled $7396.20.

There was only one other method by which defendant could clear its records as to these eight checks and that was by giving plaintiff notice of dishonor of the checks in accordance with the provisions of section 541.201 of the Iowa Code.

It is at this point that the question and the problem arise in the case at bar. Defendant failed to follow the statute. This appears without conflict in the record under the examination of Dale Ninneman, cashier of defendant-bank. His testimony concerning the matter was as follows:

"All the Exhibits 'B' through 'E' were handled in the same manner as Exhibit 'A' except as to the difference in time. *We did not give notice of dishonor of any of those items by midnight of the next business day.*

"Q. Looking at the Exhibits which have been marked 'F', 'G' and 'H', would you state to the court reporter as to the dates they were received by the Sac City State Bank? A. On September 25.

"Q. Would that be true for all three of these exhibits? A. Yes.

"Q. And on each of those cases was credit given on your books by midnight of the following business day or did you give

notice of dishonor? A. *We did not give notice of dishonor on this date here, September 25, no.*

"Q. What date did you give notice of dishonor of these three exhibits? A. *I would say September 27.*

"Q. And that would be the second business day after you had received them? A. *Yes.*" (Emphasis ours.)

██ II. Appellant raises the question that the documents sued upon are in fact no checks. Section 541.186 states: " 'Check' defined. A check is a bill of exchange drawn on a bank payable on demand."

The officers of defendant-bank testified the checks were han-. dled as demand items. The bank made no distinction in the handling of these instruments from any other check. The bank would in many cases pay these instruments over the counter.

As far as plaintiff and Breda Bank were concerned the appellant held itself out to be and came to be regarded as a paying bank as to Exhibits A to H inclusive. The appellant allowed its name to be printed on the checks. The procedure and circumstances establish defendant as a paying bank; not a collecting bank.

██ III. We have two statutory provisions pertaining to dishonored checks or drafts, section 541.201, which we have heretofore quoted, and section 541.114, which states as follows:

"Delay in giving notice—how excused. Delay in giving notice of dishonor is excused when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct, or negligence. When the cause of delay ceases to operate, notice must be given with reasonable diligence."

Section 541.114 is general in its nature. General rules as to negligence and contributory negligence would apply. It has been a part of our negotiable instruments chapter since 1913. Later, and in 1949, the Fifty-third General Assembly enacted section 541.201. It was specific in its nature and made certain provisions that paying banks must follow. It was really not contrary to 541.114, but partially superseded same and was supplementary as to the matters covered. It became a definite part of our Negotiable Instruments Law, and we cannot ignore it, and proceed on the general law alone, as appellant contends.

IV. Appellee contends this was a question of fact, decided by the court, sitting as a jury, and we are bound by the finding.

However, it is really a question of law, properly decided by the trial court.

Appellee also contends the new section was only enacted as an aid to bookkeeping. The bank contends it was not intended to strictly govern bank procedure.

The statute is clear. It is not ambiguous nor subject to construction. See 50 Am. Jur., Statutes, section 225, where it states: "A statute * * * is open to construction only where the language used in the statute requires interpretation." Also see Lee v. Hoffman, 182 Iowa 1216, 166 N.W. 565, L. R. A. 1918C 933; State v. Santee, 111 Iowa 1, 82 N.W. 445, 53 L. R. A. 763, 82 Am. St. Rep. 489.

V. Appellant in assignment of Error No. 11 states: "It was error for trial court, in its ruling, to make no provision for judgment over in favor of defendant in event plaintiff recovers on its claim against Priebe & Sons in Bankruptcy Court."

The record discloses that plaintiffs now hold the checks, Exhibits A through H. They paid the Breda Savings Bank, which had given them credit for the checks in the inception. The checks were returned to Breda Bank by defendant with the notices of dishonor.

Plaintiffs filed claims for all the checks in the bankruptcy proceeding of Priebe & Sons, Inc.

Mr. Robert V. Jones, chairman of the board of defendant-bank, testified he had studied the balance sheets and financial data in the bankruptcy proceedings of Priebe & Sons, and he was of the opinion plaintiff will recover in excess of 50 percent.

We have jurisdiction of the parties and the subject matter, and in the interest of justice we hereby provide that defendant is entitled to an assignment to defendant from plaintiff, of the claim filed in bankruptcy, when this judgment is paid, so that any dividends declared may be paid direct to defendant.

The decision, decree and judgment of the trial court is therefore modified and affirmed. The costs of this appeal are

divided, one fourth against plaintiffs and three fourths against defendant.—Modified and affirmed.

All JUSTICES concur except THORNTON, J., who dissents, and HAYS, J., not sitting.

THORNTON, J.—I respectfully dissent from the construction placed on section 541.201, Code of Iowa, 1962. The statute was not intended to place unconditional liability on the bank but to allow it the additional time in which to make its bookkeeping entries without liability for negligence during such time. I would remand the case for trial on the issue of negligence.