**WILSON et al. v. ABILENE INDEPENDENT SCHOOL DIST. et al.**

No. 2532.

Court of Civil Appeals of Texas. Eastland.

Oct. 26, 1945.

Rehearing Denied Nov. 16, 1945.

John Sayles, of Abilene, for appellants.

Smith & Eplen, of Abilene, for appellees.

GRAY, Justice.

This is a class suit, filed July 18, 1945, by J. H. Wilson and others, for themselves and their minor children, students in the Abilene Public Free High School, and members of fraternities and sororities, and in behalf of all other parents and minor

students similarly situated, against the Abilene Independent School District, its Board of Trustees and superintendent, to enjoin the defendants from enforcing an order passed by such Board of Trustees on May 14, 1945, requiring all junior and senior high school students to sign a pledge card, attested by their parents or guardians, on or before the commencement of the school term on September 10, 1945, as a prerequisite for participation in extra-curricular and inter-school activities and eligibility to graduate with honor and receive medals and scholarships, pledging on the students' word of honor that he or she is "not now a member or 'pledge' of any fraternity, sorority, secret organization, or club, local, state, or national, composed in whole or in part of school students, and not approved by the principal of the school," and further pledging the students not to join such an organization, or attend as a visitor, guest or in any other capacity, any meeting thereof or any function given for or under the auspices of such an organization, which pledge was to extend until the graduation of the student and be effective both during the school session and during vacation.

Plaintiffs prayed for a temporary injunction restraining and enjoining defendants from enforcing such order pending final determination of said suit, and that upon said final trial of the cause, such injunction be made permanent and perpetual. Hearing was had upon said application, and on August 22, 1945, the court rendered judgment refusing the application for a temporary injunction and the case is before us on appeal from such judgment.

In said application it is stated that the number of persons for and on whose behalf said suit is filed is approximately 235 school children; that plaintiffs are resident property tax paying citizens within the area embraced within said Abilene Independent School District, and that their minor children are within the scholastic age, eligible to attend the public free schools in the City of Abilene, and that they have no disabilities such as would prevent them from enrolling in said school. In addition to numerous other allegations, plaintiffs alleged that the promulgation and attempted enforcement of the rule or regulation to which reference has been made is beyond the power and authority of said Board of Trustees to make; that such proposed regulation is unreasonable, arbitrary, discriminatory as to the students involved, impairs vested rights and the obligation of contracts and invades the province of parental authority, and that said school board had neither the statutory nor the implied authority to make it.

The defendants answered, first by plea to the jurisdiction of the court for the reason that plaintiffs' petition showed that no appeal from the action of the board was made to the school authorities having appellate jurisdiction in such cases. Also, by special exception, and general and special denial.

In order to give a clearer idea of the scope and exact questions involved in this appeal, we set out haec verba the pledge card adopted by the said Board of Trustees on May 14, 1945, forming the basis of this controversy:

"Abilene Senior and Junior High Schools ———————————————— I declare
Last Name First Name
upon my word of honor:

First. That I am not now a member or 'pledge' of any fraternity, sorority, secret organization, or club, local state, or national, composed in whole or in part of school students, and not approved by the Principal of the school.

Second. That I will not join such an organization, or attend as a visitor, guest, or in any other capacity, any meeting thereof or any function given for or under the auspices of any such organization.

Third. That this pledge shall apply until my graduation both during the school session and in vacation.

I further acknowledge that I have received a copy of this pledge, and affirm that I intend to comply with its requirements in good faith, understanding that failure to do so will render me ineligible to take part in the extra curricular activities of the school and to enjoy the following honors:

1. Holding Class or club offices.
2. Taking part in inter- and intra-school contests, both athletic and literary.
3. Representing the school, a class, or any organization in any capacity.
4. Writing articles for the school paper.
5. Taking part in plays.
6. Graduating with honor.
7. Participating in assembly programs.
8. Serving as office helper, library assistant, or hall patrol.

9. Receiving medals and scholarships.

Attest ———————— Signed ————

 Parent or Guardian Pupil

School ————————— Date ————

Note to Parents: Failure to sign this pledge will prevent your child from taking part in School activities."

The original pledge was, on August 9, 1945, amended by the addition of the following:

"Approved by the principal, subject to final review by the School Board."

▇▇▇▇ Appellees timely filed their plea to the jurisdiction of the District Court to try this case, for the alleged reason heretofore stated that the appeal should have been prosecuted through the school authorities under Article 2656, R.C.S. of Texas, and such being the case, the District Court had no jurisdiction in the matter. The matter of appeal through proper school authorities as to matters affecting the management and administration of the school system, has received attention from the courts in a number of well-considered cases. Likewise, it has been clearly pointed out when a direct appeal to the courts is the proper procedure. The rule is that where the questions involved are purely questions of fact, the appeal should be made through the school authorities. But, if they be questions of law, then an appeal direct to the courts should be made. Mission Independent School District v. Diserens, Tex. Sup., 188 S.W.2d 568; Palmer Pub. Co. v. Smith, 130 Tex. 346, 109 .S.W.2d 158; 37 Tex.Jur. p. 918. The question as to whether an ordinance or regulation of a school board is reasonable, is a question of law for the courts. Zucht v. San Antonio School Board, Tex.Civ.App., 170 S.W. 840, error refused; State ex rel. Marrs, State Superintendent v. Abshier, Tex.Com.App., 263 S.W. 263. 56 Corpus Juris p. 853, sec. 1091, states the rule to be that whether a rule or regulation passed by school authorities is reasonable or valid is a question of law. Appellees admit that the question involved in this appeal is a question of law, and that the only question presented here is whether or not the District Court correctly applied the law to the undisputed facts, as disclosed by the record in the case. See Rule 385(d), Texas Rules of Civil Procedure. Also, Art. 4662, Revised Civil Statutes.

▇▇▇▇ We sustain the action of the trial court in overruling said plea to the jurisdiction.

After careful consideration of appellees' special exception, we likewise sustain the trial court in overruling same.

Appellants have brought forward three points upon which their appeal is predicated:

"First. Appellants more than met the burden the law cast upon them of showing a probable right to the temporary injunction and probable danger to their rights, as alleged, without the temporary injunction.

"Second. The order of the Board of Trustees of the Abilene Independent School District of May 14, 1945, and the pledge thereby exacted and therein set out, are void, in that same are directly contrary to the provision of Article 2902 of the Revised Civil Statutes that: 'The board of school trustees of any city or town or independent or common school district shall admit to the benefits of the public schools any person over six and not over twenty-one years old at the beginning of the scholastic year, if such person or his parents or legal guardian reside within said city, town or district.'

"Third. The order of the School Board of May 14, 1945, and the exaction by such Board of the pledge therein set out, are not expressly authorized by statute or necessarily implied from any powers vested in such Board by statute, and same are void for each and all of the following grounds and reasons:

"1. Such order and the exaction of such pledge are in direct contravention of Article 2902 of the Revised Civil Statutes.

"2. Such order and the exaction of such pledge usurp parental authority.

"3. Such order and the exaction of such pledge arbitrarily, unjustly and illegally discriminate against junior and senior high school students who are members of fraternities and sororities.

"4. Such order and the exaction of such pledge are arbitrary, unjust, oppressive, unreasonable and illegal acts.

"5. Such order and the exaction of such pledge are not a reasonable exercise of any power vested in said School Board."

Appellees have five reply points, as follows:

"First. The trial court erred in overruling Appellees' Plea to the Jurisdiction.

"Second. The trial court erred in overruling Appellees' one special exception.

"Third. The trial court correctly considered the oral testimony offered and did not abuse his discretion in denying the temporary injunction.

"Fourth. The order of the School Board, and the pledge thereby exacted, are not void as being contrary to the provisions of Article 2902 of the Revised Civil Statutes of Texas.

"Fifth. In passing said order, the School Board was lawfully exercising the express power, or at least the implied power delegated to it, under the Charter of the City of Abilene and the laws of Texas, with respect to its exclusive control and management of the Abilene school system; and said order and pledge of May 14, 1945, was not void for any of the reasons set forth under Appellants' Third Point; and the enactment of such regulation was not an abuse of the authority and discretion vested in said School Board by law."

We will not here discuss said points and reply points in the exact order presented, but our conclusion with reference to each of them will sufficiently appear in subsequent parts of this opinion.

In this appeal the controlling issues to be here decided are whether appellee School Board had the power and authority to make and enforce the regulation set out in said pledge card, and if such power and authority existed, whether said rules and regulations were reasonable, not arbitrary or discriminatory, nor invasive of parental rights and authority.

The precise questions involved have not been adjudicated by the Texas courts and we have no Texas precedent by which to be guided. While very similar issues have been considered in other jurisdictions, in none of them do the facts exactly parallel the facts in this case. Furthermore, said decisions are in conflict, and we do not have all the applicable constitutional and statutory provisions of said states by which to appraise the persuasive worth of said decisions in the determination of the issues here raised.

█ The applicable rule generally recognized throughout the United States is clearly shown in the following authorities:

"The weight of authority is to the effect that rules by a board of education or other school authority, forbidding membership of pupils in so-called Greek-letter fraternities, and providing for punishment for violation by expulsion of the pupils or rendering them ineligible to participate in certain school activities, are valid." 27 A.L.R. 1074.

"A school board under its authority to adopt rules and regulations for the well-being of the school may deny to pupils belonging to a secret fraternity, contrary to the rules of the school, the right of participating in athletic, military, literary, and similar school organizations, although the meetings of the fraternity are held outside of the schoolhouse, after school hours, and with parental consent, where it is shown that such societies have a tendency to destroy good order, discipline, and scholarship, and such a tendency is sufficiently shown by fraternity publications containing articles written in a spirit of insubordination to the school authorities; but under its general power to make rules and regulations governing the school, a board has no power to prohibit membership in a secret society regardless of the effect of such membership on the school discipline." 56 C.J. 855.

" * * * in the absence of a statute on the subject, regulations of school authorities prohibiting the connection of students with Greek letter fraternities or denying certain privileges to such members have been uniformly upheld as proper disciplinary regulations." 24 R.C.L. 629, sec. 86.

"The superintendent, principal and board of trustees of a public free school, to a limited extent at least, stand, as to pupils attending the school, in loco parentis, and they may exercise such powers of control, restraint and correction over pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education. The courts will not interfere in such matters unless a clear abuse of power and discretion is made to appear." 37 Tex.Jur. 1059, sec. 173.

See also Wilson v. Board of Education, 233 Ill. 464, 84 N.E. 697, 15 L.R.A.,N.S., 1136, 13 Ann.Cas. 330; Anno., 134 A.L.R. 1275; Kinzer v. Toms, 129 Iowa 441, 105 N.W. 686, 3 L.R.A., N.S., 496, 6 Ann.Cas. 996; Bishop v. Houston Independent School District, 119 Tex. 403, 407, 29 S.W. 2d 312; Early v. State, 23 Tex.App. 364, 5 S.W. 122; Anno., 127 A.L.R. 1502; Lee v. Hoffman, 182 Iowa 1216, 166 N.W. 565, L.R.A.1918C, 933.

Said general rule is strongly supported by the leading case of Wayland v. Board

of School Directors by the Supreme Court of Washington as reported in 43 Wash. 441, 86 P. 642, 7 L.R.A.,N.S., 352. Also, by the North Carolina case of Coggins v. Board of Education, 223 N.C. 763, 28 S.E.2d 527. Numerous other states have followed the rule announced. On the other side of the question, we have Wright v. Board of Education, 295 Mo. 466, 246 S.W. 43, 27 A.L.R. 1061, with two judges dissenting, and Hobbs v. Germany, 94 Miss. 469, 49 So. 515, 22 L.R.A.,N.S., 983. We have not attempted to collate all the cases bearing upon the subject, but those cited will sufficiently indicate the line of reasoning for and against the rule.

 The Constitution of Texas, Article 7, Sec. 1, Vernon's Ann.St., is as follows: "A general diffusion of knowledge being essential to a preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

The provision is mandatory. In pursuance of this provision, the Legislature proceeded to establish a system of schools, composed of various types of common and independent districts with boards of trustees to administer them. It cannot be doubted that the constitutional provision quoted invested in the Legislature full power and authority to do whatever is necessary to establish and maintain an "efficient" system of public free schools, and since it was necessary to establish and maintain school districts to effectuate this provision, the Legislature has the undoubted power and authority to delegate to said districts such power and authority as may be necessary to accomplish the end intended.

 In their brief, appellants insist that the action of appellee School Board in requiring junior and senior students in the Abilene High School to sign the pledge hereinabove set out, and attested by a parent or guardian, as a prerequisite to becoming eligible to participate in extra-curricular activities, hold class offices, graduate with honor and to receive medals, scholarships, etc., is in contravention of Article 1, Sections 3, 17 and 19 of the Constitution of Texas. Section 3 is as follows: "Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate pub-

lic emoluments, or privileges, but in consideration of public services."

Section 17 is as follows: "Sec. 17. No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

Section 19 is as follows: "Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

It is not clear to us what application, if any, said cited provisions of the Constitution have to the matter under review. They certainly do not contradict or limit Article 7, Section 1. If they are in anywise pertinent, following the well-recognized rule of construction, they should, if possible, be construed togther in such way as to give force and effect to all. It is obvious that no such construction should be made as would limit or modify the mandate to the Legislature, "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." We think that the premise preceding the mandate, that "a general diffusion of knowledge being essential to the preservation of the liberties and rights of the people," precludes any other construction than we have given them. It is evident Article 7, Section 1, was designed to protect and preserve the very rights enumerated in the citations quoted above.

Article 2780, Revised Civil Statutes of Texas, provides: "Said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control, and they shall have the exclusive power to manage and govern said schools * * *."

The charter under which said school is operated provides that "the city of Abilene * * * shall be and constitute an independent school district," with seven trustees, and that "said board of trustees * * * shall succeed to and be vested with,

all the powers, duties, obligations and rights now enjoyed by the present board of trustees, or that hereafter may be provided by general law." H. B. 505, 32nd Legislature, Loc. and Sp.Laws 1911, c. 45.

 "School districts are quasi public corporations. It is said by the courts, particularly with reference to independent districts, that they are of the same general character as municipal corporations; * * * which derive their powers by delegation from the State. They are state agencies, erected and employed for the purpose of administering the state's system of public schools." 37 Tex.Jur. 864, 865, sec. 16.

" * * * Of course the board of education of a city cannot legally exercise power not granted to it by the Constitution and laws or by the charter of the city. But the board does have delegated powers, the exercise of which necessarily involves judgment and discretion." 37 Tex.Jur. 941, Sec. 72.

 It will be seen that the grant of power and authority to school boards is in general terms. The Legislature could not possibly foresee all problems and situations that would arise in the administration of the schools. Especially to be noted is the fact that neither Article 2780, nor said Charter creating the Abilene Independent School District, expressly conferred the right to regulate student membership in fraternities and sororities. If the power exists in said Board to do so, such power must be implied. But, necessarily, school boards are given a wide discretion in such matters. They may make all such rules and regulations as in their judgment are necessary to maintain an "efficient" system of schools, subject to the limitation that there be no abuse of discretion, and that such regulations be not arbitrary, unreasonable or in violation of law. An excellent statement of the rule is found in Moseley v. City of Dallas, Tex.Com.App., 17 S.W.2d 36, 41, per Judge Critz, as follows: "Since the board of education of the city of Dallas has the power and authority, under the Constitution and laws of this state, and the charter of said city, to exercise sound judgment and discretion in performing and carrying out the powers and duties required of them by law, the courts will not interfere with them in the exercise of such powers, unless there is a clear abuse of their discretion, or a violation of law, for to do so where there

is no abuse of discretion or violation of law would be to substitute the discretion of the courts for that of the board. R.C.L. vol. 24, p. 575; City of New Braunfels v. Waldschmidt, 109 Tex. 302, 207 S.W. 303."

 Before adopting the regulation involved in this appeal, appellee School Board proceeded very cautiously. The Board was importuned by many patrons of the junior and senior high schools, as well as by the Parent-Teachers' Association to take such action. A survey as to the effect of student membership in fraternities and sororities in other high schools of the State had been made and submitted to the Board, which showed such membership to be detrimental to the efficiency of said schools. Open and public meetings were held by the Board for free discussion of the matter. Practically all of the teachers in both junior and senior high schools favored adoption of the regulation. We, therefore, conclude that said Board did not abuse its discretion in the matter, except as it sought to extend such regulation to the vacation period. We further hold that, if appellee School Board should, upon competent evidence, find as a fact that membership of its students in fraternities during the school term was detrimental to the efficiency of the schools, it would have the power to prohibit such membership. And likewise as to student attendance upon fraternity and sorority functions as a guest during the school term.

As intimated above, we hold that the attempt on the part of the Board to extend such regulations to cover the period during which the school was in summer vacation, would be an undue invasion of parental authority. In none of the Texas or other cases which we have examined have the courts sought to extend the rule of loco parentis to such length, and we are unwilling to so extend it here. To do so would be shocking to every concept of parental authority. Furthermore, during said vacation period the teachers and pupils are scattered and it would be practically unenforceable. We sustain appellants' contention on this point.

 However, we have concluded that under the circumstances there was no immediate necessity for the granting of a temporary injunction. Under the allegations of the petition, the rule was not to be enforced until the beginning of the school term on September 10, 1945. The next vacation period would begin about

nine months in the future, and under such circumstances there is no such imminent need for the issuance of the writ as is required by law. "There must be some emergency or necessity for the injunction." 24 Tex.Jur. 124. Where there is no emergency (and there was none with reference to preventing the application of the School Board's rule to the summer vacation period of 1946) a temporary injunction may properly be denied and the application be left to a trial on the merits. Basey v. Reesing, Tex.Civ.App., 243 S.W. 1002; Oriental Oil Co. v. San Antonio, Tex.Civ.App., 208 S.W. 177.

The judgment is affirmed.

LONG, J., disqualified and not sitting.