Gene BALL, Appellant,

v.

KERRVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 15094.

Court of Civil Appeals of Texas, San Antonio.

Feb. 28, 1973.

Rehearing Denied Jan. 30, 1974.

Joe Mike Egan, Jr., Kerrville, for appellant.

Lavern D. Harris, Kerrville, for appellee.

CADENA, Justice.

Gene Ball appeals from the judgment of a Kerr County district court declaring that his teaching contract with the Kerrville Independent School District for the 1969–70 school year was lawfully terminated by the school district, affirming the order of the State Commissioner of Education which upheld the action of the school district, and setting aside the decision of the State Board of Education which reversed the decision of the State Commissioner.

Ball was suspended because of his failure to shave a Vandyke style beard as requested by the district's superintendent. The superintendent's recommendation that Ball's contract be terminated was adopted by the district board of trustees on September 3, 1969. On September 15, 1969, at the request of appellant, the district board held a hearing to reconsider the matter. At this hearing, Ball and his counsel were present and were given the opportunity to present evidence and cross-examine witnesses. On September 23, 1969, the district board formally terminated Ball's contract, with the provision that he be paid his full salary for the month of September.

Ball appealed the decision of the district board to the State Commissioner of Education who, after a hearing held on November 9, 1969, rendered his decision, on December 11, 1969, upholding the action of the district board. Ball then appealed to the State Board of Education, and on January 5, 1970, that agency reversed the decision of the State Commissioner. On February 19, 1970, the school district filed this suit in the district court of Kerr County. The district sought judgment upholding the action of the district board terminating Ball's contract and of the State Commissioner upholding the action of the district board, and setting aside the decision of the State Board. The judgment of the district court thus granted all relief sought by the school district.

The school district's prayer for relief was based on several contentions which may fairly be summarized as follows: (1) The State Board of Education lacked jurisdiction to consider the question of the

validity of Ball's discharge. (2) The district court, in determining the case, was not bound by the substantial evidence rule. (3) The decision of the State Board is not supported by substantial evidence. (4) The decision of the State Board is contrary to law.

### Jurisdiction of State Board

Under our Education Code,[1] control of education at the state level is vested in the Central Education Agency, which consists of the State Board of Education, the State Board for Vocational Education,[2] the State Commissioner of Education, and the State Department of Education. Sections 11.01, 11.02(a).

At the local level, the management, control and operation of the schools is the responsibility of local school districts on which is imposed the power to perform all functions not specifically delegated to the Central Education Agency. Section 11.01. The local school districts have the exclusive power to hire and dismiss teachers. Sections 13.101–13.114. However, the action of the local boards in dismissing teachers is subject to review by higher educational authorities.

Where, as in this case, a teacher's contract is terminated, during the school year covered by the contract, the applicable statute is Section 13.115, which provides that the discharged teacher " . . . shall have the right to appeal . . . " to the State Commissioner, but gives the teacher the option of challenging "the legality" of the local board's action by suit in a district court. Section 13.115(a). If the teacher elects to seek review of his ouster by the State Commissioner, either party to the appeal may seek review of the commissioner's action by the State Board of Education. After the State Board has acted,[3] the dissatisfied party may appeal to the courts. Section 13.115(c).

■ There can be no doubt that the statute vests in the commissioner the power to review the action of a local board which has the effect of terminating a teacher's employment. Just as clearly, the statute gives to the discharged teacher the "right" to appeal to the commissioner. While the statute permits the filing of a suit in a district court for the purpose of determining the "legality" of the school board's action, the language of the statute can only be construed as giving to the teacher the option of seeking relief either by an administrative appeal to the higher school authorities or by filing suit directly in the district court without availing himself of the administrative remedy.

If the teacher elects to appeal through administrative channels, the statute unequivocally vests in the State Board of Education the power to review the decision of the commissioner.

Our courts have consistently held, as stated by this Court in Hinojosa v. San Isidro Independent School District, 273 S. W.2d 656, 657 (1954, no writ), that a teacher whose contract has been terminated during its term by a local school board must " . . . apply to the school authorities for relief before filing his suit in the district court," because the applicable statutes reveal a legislative intent " . . . to keep school controversies out of the courts as much as possible." See also, Harkness v. Hutcherson, 90 Tex. 383,

1. Unless otherwise indicated, all statutory references are to sections of Tex.Educ.Code Ann., V.T.C.A.

2. The State Board of Education also acts as the State Board for Vocational Education. Section 11.24.

3. The review of the commissioner's decision by the State Board is based on a record of the testimony heard by the commissioner, with the parties having the right to file briefs and present oral argument. Sections 106, 205, Rules of the State Board of Education. The school district does not here question the validity of the State Board's refusal to permit the presentation of additional testimony. In this case, although counsel for the school board requested additional time, the State Board allowed each party 20 minutes for the presentation of oral argument.

38 S.W. 1120 (1897); Farrar v. Colorado Independent School District, 444 S.W.2d 204 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.); Daniel v. Dallas Independent School District, 351 S.W.2d 356 (Tex. Civ.App.—El Paso 1961, writ ref'd n. r. e.); Murray v. San Augustine County Board of School Trustees, 307 S.W.2d 622 (Tex.Civ. App.—Beaumont 1957, no writ).

The statutory provision to the effect that the teacher may elect to test the legality of the termination of his contract by appealing directly to the courts would seem to be no more than a legislative recognition of the judicially promulgated rule to the effect that if the questions involved are pure questions of law, the courts are available for review of the administrative action immediately, without prior exhaustion of the available administrative appellate remedy. The school district here asserts that, since the facts in this case are undisputed, the case involves only the determination of questions of law; and that, therefore, the State Board was without jurisdiction to review the decision of the State Commissioner. In support of this argument, the school district relies heavily on Wilson v. Abilene Independent School District, 190 S.W.2d 406, 409 (Tex.Civ.App.—Eastland 1945, writ ref'd w. o. m.), where there is language to the effect that if the questions involved " . . . be questions of law, then an appeal direct [sic] to the courts *should* be made." (Emphasis added.) Relying on the use of the word "should" in *Wilson,* the school district argues that where the controversy involves only questions of law, recourse to the statutory administrative remedies is unavailable, and that the only remedy is judicial review of the action of the local board.

At the outset, it should be noted that the school district, by asking the trial court to affirm the decision of the commissioner, is taking a position clearly inconsistent with its contention that the higher administrative educational agencies lacked jurisdiction to review the action of the local board in terminating Ball's contract. That is,

while willing to accept the statutory grant of appellate power to the commissioner by asking the court to affirm the ruling of the commissioner, the school district asks that the courts ignore that portion of the statute which makes the decision of the commissioner reviewable by the State Board. There is no justification for interpreting the statute in this manner. Assuming that the discharged teacher has the right, as the statute says he does, to appeal to the commissioner, there is no basis for holding that, after the commissioner has exercised his statutory jurisdiction, which the school district does not question, the discharged teacher *must* abandon his right to administrative review in midstream and, ignoring the grant of appellate jurisdiction to the State Board, bypass the State Board and appeal directly to the courts.

█ Even if it be assumed that where the controversy concerning the allegedly wrongful termination of a teacher's contract involves only "pure" questions of law, the teacher may bypass the administrative appellate machinery and seek judicial relief directly, our attention has been called to no case holding that in such a case the unhappy teacher *must* appeal directly to the courts and may not seek review by higher school officials. The *Wilson* opinion, despite the statement that in such a case the appeal "should" be directly to the courts, did not so hold. That case did not involve the discharge of a teacher; and, in any event, since review of the school board's decision was sought by appealing directly to the courts, the only question which the *Wilson* court was called on to decide was whether, under the circumstances of that case, it was *permissible* to seek judicial relief without first exhausting the administrative remedies afforded by statute. This is apparent when we consider the two cases relied on in the Wilson opinion. In Mission Independent School District v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 570 (1945), the Supreme Court did not go beyond saying that where there are presented for decisions only "pure" ques-

tions of law, immediate resort to the courts is "proper." Similarly, in Palmer Publishing Co. v. Smith, 130 Tex. 346, 109 S.W.2d 158, 159 (1937), the Supreme Court merely said that if the act of the subordinate school officials was " . . . in violation of any statute, or utterly lacking in statutory · authority, it was void, and recourse to the courts was immediately available." To our knowledge, no case has held that where only questions of law are involved, recourse to the administrative appellate remedies is not available. More significantly, no decision, as far as we know, has held that in a case involving the alleged wrongful termination of a teacher's contract, immediate recourse to the courts is permissible. In all cases involving the alleged wrongful termination of a teacher's contract, our courts have held that exhaustion of the administrative remedies is a condition precedent to judicial review.

The distinction between questions of law, on the one hand, and questions of fact, on the other, is, at best, tenuous. Green, Judge and Jury 270 (1930). It is true that in *Wilson* the Eastland Court said, in holding that resort to the courts could be had without prior exhaustion of administrative remedies, "The question as to whether an ordinance or regulation of a school board is reasonable, is a question of law for the courts." 190 S.W.2d at 409. It is readily apparent that what is sometimes characterized, in a rather offhand manner, as a question of "pure" law, such as the reasonableness of a regulation, necessarily involves an inquiry concerning the existence of certain "facts." For example, the *Wilson* opinion itself, in upholding a ban against membership in fraternities, made it clear that its "legal" conclusion was based on administrative findings of fact. "We further hold that, if appellee *School Board* should, upon competent evidence, *find as a fact* that membership of its students in fraternities during the school term was detrimental to the efficiency of the schools, it would have the power to prohibit such membership." 190 S.W.2d at 412 (emphasis added).

The fact that resolution of questions of "pure" law often depends on findings of fact is shown in the opinion of this Court in Zucht v. San Antonio School Board, 170 S.W. 840 (1914, writ ref'd), involving the validity of a requirement of smallpox vaccination as a prequisite to admission to school. After reciting that questions involving the reasonableness of regulations presented only questions of law for the court, Justice Moursund pointed out that frequently " . . . the solution of the question is dependent upon the operation of the ordinance or regulation upon particular persons or conditions of fact that cannot be known to the court until made to appear by evidence." 170 S.W. at 842. Significantly, in *Zucht,* the Court's conclusion of "law" that the regulation was reasonable was based on fact findings made by a jury in answer to special issues.

The jurisdiction of the State Board to review the action of subordinate school officials, including local boards and the State Commissioner, in cases involving the alleged wrongful termination of a teacher's contract cannot be doubted without ignoring the clear language of the applicable statute.

*Application of Substantial Evidence Rule*

Section 13.115(c), which gives to courts the power to review decisions of the State Board in cases involving termination of teachers' contracts, decrees that the decision of the State Board " . . . shall be final on all questions of fact . . . " and permits a reversal of the State Board's decision only if the decision: (a) is not supported by substantial evidence; (b) is arbitrary or capricious; or (c) is in error in application of existing law to the facts of the case.

The Legislature has, thus, not only delegated to school authorities the function of determining disputes arising from the termination of teachers' contracts, but has, without equivocation, implemented its intention to keep such disputes in the hands

of those knowledgeable in school matters by declaring that the appeal to the courts authorized by the statute shall be under the substantial evidence rule. Board of Trustees of Crystal City Independent School District v. Briggs, 486 S.W.2d 829 (Tex.Civ.App.—Beaumont 1972, no writ); McRae v. Lindale Independent School District, 450 S.W.2d 118 (Tex.Civ.App.—Tyler 1970, writ ref'd n. r. e.).

The school district places particular reliance on Poulos v. Eagle Pass Independent School District, 443 S.W.2d 614 (Tex.Civ. App.—Waco 1969, writ ref'd n. r. e.), where it was held that the district court, hearing an appeal from a decision of the State Board declaring that a superintendent's contract was valid and enforceable, was not bound by the substantial evidence rule. But Poulos did not involve the termination of a teacher's contract. As the Court pointed out, ". . . the school district has never contended that appellant was discharged for good cause, if he had a valid contract. Rather, throughout this controversy, the district has consistently maintained that the contract is invalid. The sole issue in the case is thus resolved into a question of law. The State Board of Education does not have final or conclusive discretion on that question." 443 S.W.2d at 616.

Clearly the Poulos opinion did not view the case as one involving the termination of a teacher's contract, and the holding concerning the inapplicability of the substantial evidence rule was not meant to be applicable to a case involving the discharge of a teacher. This is made apparent by the two cases on which the Waco Court of Civil Appeals based its conclusion that the substantial evidence rule was not applicable. In Los Angeles Heights Independent School District v. Whitehead, 34 S.W.2d 895, 896 (Tex.Civ.App.—San Antonio 1931, writ ref'd), this Court in holding that the State Board's ruling on the question of whether or not a superintendent had been legally elected and had timely accepted his office, pointed out that the controversy ". . . does not appear to be one in which the school authorities have final or conclusive discretion. It does not involve questions merely of regulation, or policy, *or the employment or discharge of teachers* . . . or any other question merely incident to the management and control of those schools." (Emphasis added.) Similarly, the holding in Birdville Independent School District v. Deen, 141 S.W.2d 680, 684 (Tex.Civ.App.—Fort Worth 1940, affirmed, 138 Tex. 339, 159 S.W.2d 111 [1942]), is expressly based on the fact that the controversy before the Court was not ". . . one that involves simply questions of regulation, or policy, or the employment or discharge of teachers or employees, or any other question merely incident to the management and control of the school . . . ."

The distinction between the case before us and Poulos, Whitehead and Deen is readily apparent. We have before us a case which does involve the discharge of a teacher and questions of regulation and policy which are merely "incident to" the routine management, control and operation of the schools. Questions relating to the conduct and mode of dress of teachers are the type of matters which are of peculiar concern to school authorities in the day-to-day operation of a school system. Even a casual reading of our school laws compels the conclusion that it was precisely questions of this type, as distinguished from questions of general law, such as the elements of a binding contract, which the legislature intended to delegate for determination to school administrators.

The other case referred to in the Poulos opinion, State of Texas-Board of Morticians v. Cortez, 160 Tex. 532, 333 S.W.2d 839 (1960), can have no possible application here. It does not involve questions relating to the administration of schools. More importantly, the statute involved in Cortez, which pertained to the powers and functions of the State Board of Morticians (Article 4582b, Section 4, Vernon's Tex. Rev.Civ.Stat.Ann.), expressly provides, in

sharp contrast to the provisions of Section 13.115(c), that where an order of the Board of Morticians is challenged in court, " '. . . the trial thereon *shall be conducted de novo, as in the case of an appeal from the Justice Court to the County Court.* * * * ' " 333 S.W.2d at 841 (emphasis by the Supreme Court).

Adherence to the substantial evidence rule in this case not only gives effect to the express language of the appliable statute, but also furthers the attainment of the social policy adopted by the Legislature which is designed to reduce to a minimum judicial interference in matters which are merely incidental to the routine management and control of the internal affairs of the school system. The final right to exercise discretion in matters which involve a determination of such questions as whether the wearing of a Vandyke beard by a teacher is, or tends to be, disruptive of the educational process has been legislatively committed to the State Board of Education; and judicial review of the Board's exercise of that discretion is limited by the statute to a determination of whether the Board's decision is, or is not, supported by substantial evidence.[4]

The conclusion that the substantial evidence rule is applicable to this case is in no way inconsistent with the holding of the Supreme Court in Mission Independent School District v. Diserens, already discussed. *Diserens* did not involve the termination of a teacher's contract; and, therefore, Section 13.115 was not involved in the decision of that case. *Diserens* was not an appeal from a decision of the State Board of Education. In fact, *Diserens* was not an appeal from any order of any school authority, state or local. The question in that case concerned the enforcement of a negative covenant by a music teacher of unique talent not to teach elsewhere in the public schools of Texas. Questions involving the propriety of en-forcing such negative covenants have not been committed to the school authorities.

### Lack of Substantial Evidence to Support Board's Order

Under Section 13.115(c)(1), (2), a decision of the State Board may be overturned if it is not supported by substantial evidence or if the order is arbitrary or capricious. These two bases for setting aside the decision of the State Board are, in fact, the same. Under the substantial evidence rule, the issue to be decided is the reasonableness of the order, and the legal test of the reasonableness of the order is whether it is reasonably supported by substantial evidence. The court, of course, does not act as an administrative body to determine whether it would have reached the same factual conclusion that the State Board reached. The function of the court is *simply to determine whether the agency's order is supported by substantial evidence.* City of San Antonio v. Texas Water Commission, 407 S.W.2d 752, 756 (Tex.1966); Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 82 (1939). If an order is reasonable, it is necessarily not arbitrary or capricious. An order is reasonable if it is supported by substantial evidence. Therefore, an order or decision which is supported by substantial evidence is not arbitrary or capricious.

█ There can be no doubt that school officials at the local level may adopt all regulations which promote the state's interest in maintaining an atmosphere conducive to an orderly process of classroom learning, and that they have a right to demand respect for legitimate and necessary administrative rules. They need not tolerate interference with school management, nor need they condone conduct which undermines school authority and discipline and disrupts the orderly process of learning. *In short, they may adopt all reasonable rules and regulations for the govern-

---

4. Where the Legislature intended that review of an agency decision not be limited by the substantial evidence rule, it has had no dif-ficulty in making such intent clear. See, for example, Section 13.215.

ment of the schools under their charge, including rules governing the conduct and dress of teachers.

■ The school district asserts that Ball's wearing of the Vandyke beard caused, and would continue to cause, disruptions, disturbances and distractions in the educational process.

There is evidence which would support a finding that the wearing of a beard by male teachers would be disruptive of good order, discipline, decorum and effective operation of the schools. However, with but one exception, all of this testimony consists of the opinions of various administrators of the school district, based on what they have heard at "seminars" and what they have read in unidentified publications. Further, an examination of the testimony reveals that these witnesses merely testified to the effect that professional educators agreed that conduct on the part of teachers which distracts students should be avoided. Not one witness testified that he had been told, or had read, or that educators were of the opinion that the wearing of a beard by a teacher would be a significant distracting influence; and no one testified that, based on his personal experience, the wearing of a beard by a teacher would be a distracting influence. At best, the testimony of the administrators was merely to the effect that they feared, without detailing the facts, experience or opinions of others on which such fears were based, that the wearing of a beard by Ball would cause distraction among the students.

There was testimony to the effect that when, prior to the first day of class, Ball appeared at a general faculty meeting wearing a beard, there was some "murmuring" among the members of the faculty, and some speculation concerning what the administration would do about it. The superintendent made the general statement that the teachers were distracted, and he felt that the meeting was not as effective as it might have been otherwise.

Some six or eight parents called the school to insist that their children not be assigned to Ball's classes. The superintendent testified that he had received perhaps 60 anti-beard statements from throughout the state, without specifying what number of these complaints came from the Kerrville district. Some 200 persons signed a petition urging that the Kerrville School Board reconsider its termination of Ball's contract.

It may be that, if the State Board had upheld the local board's action in terminating Ball's contract, such evidence would constitute substantial evidence supporting that decision and the finding that the wearing of the beard by Ball had a tendency to disrupt good order, discipline and scholarship. But, since the State Board reversed the action of the subordinate school officials, it must be assumed that it found that the wearing of the beard by Ball did not interfere with the orderly functioning of the schools; and that, therefore, his failure to shave did not constitute good cause for terminating his contract.

Before the judgment of the school board on these factual matters can be set aside, it is necessary to hold that the negative findings made by the State Board are not supported by substantial evidence, and that the evidence so conclusively required affirmative findings that the refusal to make them was arbitrary or capricious. Gerst v. Nixon, 411 S.W.2d 350, 359 (Tex.1967).

We cannot say that the evidence in this case conclusively required the affirmative finding that the wearing of the beard by Ball interfered with the orderly functioning of the schools. As already pointed out, the evidence consisted almost entirely of the opinions of school officials. The superintendent and principal expressed the opinion that it would be difficult to enforce the rule prohibiting the wearing of facial hair by students if one of the teachers was allowed to wear a beard. This argument is not unpersuasive, provided we assume that school authorities may impose

the same restrictions on teachers as on students solely to facilitate the enforcement of the rules relating to student conduct and dress.⁵ However, in this case the argument loses much of its persuasiveness when we consider that there was no objection by school authorities to the wearing of mustaches by male teachers, although the ban on student facial hair included student mustaches. No explanation is offered in support of the position that the wearing of mustaches by teachers does not make more difficult the enforcement of the ban on student mustaches, but that the wearing of facial hair by a teacher below the lips makes difficult the enforcement of the rule against student facial hair. The tolerance by the school district of the wearing of mustaches by teachers certainly justifies a skeptical attitude toward the school district's contention.

The fact that there was some "murmuring" at the faculty meeting when the bearded teacher appeared is not sufficient to compel the affirmative finding which the State Board declined to make.

We conclude that the school district failed to discharge its burden of showing that the decision of the State Board is not supported by substantial evidence. Stated differently, we hold that the school district did not show that the evidence is so conclusive that it compels the making of the affirmative factual findings which the State Board did not make.

The finding that the record does not support the conclusion that the decision of the State Board is not supported by substantial evidence compels, as explained above, the conclusion that the school district failed to establish that the action of

the State Board was arbitrary or capricious. We have thus disposed of two of the bases which would support the action of the trial court in setting aside the decision of the State Board.

### Misapplication of Law to Facts

The school district does not call our attention to any statute or other rule of law which was not properly applied to the facts of this case by the State Board. The implied finding that there did not exist good cause for terminating Ball's contract is a finding of fact. We know of no rule of law which, when applied to that fact, would compel a ruling other than that made by the State Board.

■ Despite our conclusion that the trial court erred in setting aside the decision of the State Board, we feel that the cause should be remanded to the trial court. The trial judge considered only the record of the testimony heard by the commissioner and denied to the school district the right to present additional testimony to the court. We believe that the parties had the right to present testimony to the trial court. Wylie Independent School District v. Central Education Agency, 488 S.W.2d 166 (Tex.Civ.App.—Austin 1972, no writ).

The question of whether or not Ball had a constitutional right to wear a beard as an exercise of a right to engage in "symbolic speech" is not before us.

The judgment of the trial court is reversed. But, since the court's refusal to permit the school district to present testimony prevented the district from fully developing its case, the cause is remanded for further proceedings.

5. For example, a rule barring married students from participating in certain school activities has been upheld. Kissick v. Garland Ind. School Dist., 330 S.W.2d 708 (Tex. Civ.App.—Dallas 1959, writ ref'd n. r. e.).

Could it be argued that a rule prohibiting marriage by teachers could be defended on the ground that the rule made it easier to enforce the rule against student marriages?