Gene BALL, Appellant,

v.

KERRVILLE INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 15458.

Court of Civil Appeals of Texas,
San Antonio.

Oct. 15, 1975.

Rehearing Denied Nov. 12, 1975.

Joe Mike Egan, Jr., Kerrville, for appellant.

Lavern D. Harris, Ronald R. Winfrey, Kerrville, for appellee.

BARROW, Chief Justice.

Appellant has perfected his appeal from a judgment setting aside a decision of the State Board of Education that appellant's contract to teach math in appellee District during the 1969 1970 school year was wrongfully terminated by the District's Board of Trustees. A take-nothing judgment was entered on appellant's cross-action whereby he sought to recover the unpaid salary due under said contract.

This is the second appeal of this cause and reference is here made to our first opinion for a full statement of the background of this controversy and the basis for our prior decision. See *Ball v. Kerrville Independent School District*, 504 S.W.2d 791 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.). We are bound by this decision as the law of this case.

Ball had taught math in this school district for six consecutive years and had a contract to teach during the 1969 1970 school year for a salary of $6,417.00. On August 29, 1969, he appeared at a general faculty meeting wearing a Vandyke style beard. The District's superintendent be-

lieved the beard would be disruptive of the educational process in the school and directed Ball to shave the beard before commencing to teach his classes on September 2nd. Ball did not believe the beard would be disruptive and said he would shave the beard only if it proved disruptive after a trial period. Ball appeared for his classes on September 2nd with the beard and was suspended by the superintendent. On September 3rd, the District's Board of Trustees, at a specially called meeting, voted 6 0 to terminate Ball's teaching contract because of his failure to comply with the superintendent's directive.[1] A full public hearing was held on September 15th at the request of Ball, and many citizens of the district attended and testified regarding this issue which had become quite emotional. On September 23, 1969, the trustees again unanimously voted to terminate Ball's contract, but agreed to pay his salary for the month of September. Although ten reasons were given for this termination, all relate to Ball's alleged insubordination or uncooperativeness in refusing to comply with the superintendent's directive to shave his beard.

Ball timely perfected his appeal from the termination of his contract to Dr. J. W. Edgar, State Commissioner of Education, in accordance with Section 13.115 of the Tex. Educ.Code Ann. (1972).[2] This appeal was heard on November 19, 1969, at which time all parties were represented by counsel and several witnesses were heard. On December 11, 1969, the Commissioner issued his ruling whereby he upheld the action of the Board of Trustees in terminating this contract. Ball appealed this decision to the State Board of Education, and, after a review of the testimony heard by the Commissioner, the State Board, on January 5, 1970, overruled the decision of the Commis-

sioner by a vote of 8-7. Thus, the State Board of Education overturned the action of the District's Board of Trustees in terminating Ball's contract. This decision was appealed to the District Court by the Trustees.

In our prior opinion, we recognized the jurisdiction of the State Board of Education under the Texas Education Code to review the action of the Board of Trustees in cases involving the alleged wrongful termination of a teacher's contract. It was further held that the power of the courts under the Code to review decisions of the State Board permits a reversal of the State Board's decision only if the decision: (a) is not supported by substantial evidence; (b) is arbitrary or capricious; or (c) is in error in application of existing law to the facts of the case. See also: *Temple Independent School District v. State Board of Education,* 493 S.W.2d 543 (Tex.Civ.App. Austin 1973, no writ); *McRae v. Lindale Independent School District,* 450 S.W.2d 118 (Tex.Civ.App. Tyler 1970, writ ref'd n. r. e.); *Lorena Independent School District v. Rosenthal Common School District,* 421 S.W.2d 491 (Tex.Civ. App. Waco 1967, writ ref'd n. r. e.).

The primary question before us on this appeal is whether the District discharged its statutory burden of showing the decision of the State Board that Ball's contract was improperly terminated is without support in substantial evidence and thereby arbitrary.

We have reviewed the lengthy record of the testimony introduced before the trial court on the second trial. This testimony is substantially similar to that reviewed at length in our prior opinion and little would be gained by restating same. Suffice to say, District introduced testimony from several educators who expressed the opinion that to permit Ball to teach without remov-

---

1. Section 13.109 of the Tex.Educ.Code Ann. (1972) provides in part:

   "Any teacher, . . . may be discharged during the school year for one or more of the following reasons, which shall constitute lawful cause for discharge: . .

   (4) repeated failure to comply with official directives and established school board policy; . . . ."

2. The Texas Education Code was enacted by Acts 1969, 61st Leg. 2735, dr. 889, effective September 1, 1969.

al of his beard would have been likely to cause a disruption in the school system under the circumstances.

A substantial part of District's argument is predicated upon the unsupported assumption that Ball violated a rule of the District which prohibited teachers from wearing beards in the classrooms. Each of the District Trustees was called as a witness and each testified that there was no such formal rule on August 29, 1969. At the very least, there is substantial evidence to support the finding by the State Commissioner that there was no such rule or even an "unwritten policy" on August 29, 1969. There was no dress code for faculty members although a high standard was voluntarily set and followed in this school system. However, there was a dress code for students which required that boys be clean shaven. The superintendent was of the opinion on August 29, 1969, that this requirement would be difficult to enforce if male teachers were permitted to wear beards. On the other hand, at least two teachers wore mustaches without any noticeable disruption in the school system. There was some evidence that another teacher had worn a beard without incident on at least two prior occasions. Each of the trustees testified that he or she was more concerned about Ball's insubordination and refusal to cooperate with the superintendent rather than Ball's physical appearance.

■ The question before the State Commissioner and the State Board was whether the superintendent was justified on August 29, 1969, in directing that Ball shave off the beard in order to avoid a disruption in the educational process of the school system. This was a professional judgment call to be made initially by the superintendent, but subject to review by the District's Board of Trustees, the State Commissioner of Education and finally by the State Board of Education. A majority of the State Board in the exercise of the authority granted it by the Legislature held that the Trustees wrongfully terminated Ball's contract. It cannot be concluded that the District established as a matter of law that this decision is not supported by substantial evidence.

District also urges that the State Board misapplied the law to the facts in this case in that the State Board erroneously concluded that Ball had a constitutional right to wear a beard. It is true that Ball strongly urged such contention before the State Commissioner and the State Board while he now seeks to preserve such question for a Federal Court's determination. However, the State Commissioner stated the question before him in the following manner:

"The question here is whether or not the rule laid down by the superintendent on August 29, 1969 that appellant must remove his beard as a condition to his being permitted to perform as a teacher under his contract was a reasonable and necessary rule at that time to ensure and preserve a normal and orderly operation of the school in the current school term."

The State Commissioner concluded that the actions of the superintendent and the Trustees were reasonable and necessary. A majority of the State Board concluded to the contrary. It cannot be concluded from this record that the State Board's decision was based upon an erroneous application of the law to the facts.

We cannot say from this record that the District discharged its statutory burden of establishing as a matter of law that the decision of the State Board of Education is not supported by substantial evidence or is based upon an erroneous application of the law. Therefore, the trial court erred in setting aside such decision which held that Ball's contract was wrongfully terminated.

■ Ball sought to recover, on his cross-action, a judgment for the salary remaining unpaid on this contract. He was paid for the month of September, but has not been paid the remaining sum of $5,972.25 owed under his contract. He offered to resume teaching shortly after the State Board made its decision, but the Trustees decided

to perfect an appeal from said adverse decision. The District admitted at the trial that it had sufficient available school funds on hand to pay the balance of his salary at the following times: during the school year of 1969–1970; at the time it perfected its appeal from the decision of the State Board; and at the time Ball filed his cross-action seeking the balance of his salary. He, therefore, is entitled to a judgment against the District for the balance owed on his contract. *National Surety Corporation v. Friendswood Independent School District*, 433 S.W.2d 690 (Tex.1968). Ball is also entitled to judgment for interest on said sum from February 19, 1970, when the District perfected its appeal from the decision of the State Board by filing this suit.

The judgment of the trial court is reversed and here rendered that appellant, Gene Ball, recover from appellee, Kerrville Independent School District, the sum of $5,972.25 with interest on said sum at the rate of six percent per annum from February 19, 1970, together with his court costs.